

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-17-1994

# Johnson v. Love

Precedential or Non-Precedential:

Docket 94-7168

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Johnson v. Love" (1994). *1994 Decisions.* Paper 195.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/195

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 94-7168


MELVIN L. JOHNSON

v.

WILLIAM LOVE, Acting Superintendent;
THE ATTORNEY GENERAL FOR THE STATE OF PENNSYLVANIA

Appellants


On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil Action No. 91-cv-00775)


Argued August 30, 1994

BEFORE:  STAPLETON and GREENBERG, Circuit Judges,
         and ATKINS,* District Judge

(Opinion Filed  November 17, 1994)



            William R. Scullion (Argued)
            Deputy Prosecutor
            Office of the District Attorney
            York County Courthouse
            28 East Market Street
            York, PA  17401
              Attorney for Appellants

            James V. Wade (Argued)
            Office of the Federal Public Defender
            100 Chestnut Street, Suite 306
            Harrisburg, PA  17101
              Attorney for Appellee

*Honorable C. Clyde Atkins, United States District Judge for the Southern District of Florida, sitting by designation.

OPINION OF THE COURT


STAPLETON, Circuit Judge:

This habeas corpus case comes to us for the second time after having been remanded to the district court to allow the state prosecutor to explain his peremptory challenge of a black venirewoman in the petitioner's murder trial. The district court found the explanation unsatisfactory and ordered the Commonwealth of Pennsylvania to retry Melvin Johnson within 90 days or release him from custody. The Commonwealth appealed, and we stayed the effectiveness of the district court's order pending appeal. We will affirm the judgment of the district court.


I. FACTS

Melvin Johnson is black. He was convicted of second degree murder, robbery, burglary, theft, aggravated assault, and criminal conspiracy by a jury in the Court of Common Pleas for York County, Pennsylvania. The victims of these crimes were an elderly white man and his sister, both of whom were beaten by their assailants. The male victim was known to have solicited sexual favors from young black boys over a period of time prior to his death.

The venire for the jury consisted of fifty-two people, only three of whom were black. After five white women and one white man had been seated as jurors, the first black member of the venire, Joyce Orr, was called for voir dire questioning. She gave ambiguous responses to the questions of the prosecutor, Mr. Rebert, concerning the death penalty. The trial judge sought to clarify her views on that subject, and the prosecutor, without waiting for clarification, exercised a peremptory challenge to exclude her.[1]

---

[1]. The following colloquy took place:

> Do you have any strong feelings against the death penalty that would prevent you from serving on a Jury in this case?
>
> A. No.
>
> Q. Do you think the death penalty is justified in certain circumstances?
>
> A. No.
>
> Q. You don't think it is justified?
>
> A. No.
>
>           \*   \*   \*
>
>   MR. REBERT: I would request a challenge for cause on that basis, Your Honor.
>
>   THE COURT: We will ask a few questions of the witness.
>
>   Although you do not feel it is justified --
>
>   MR. REBERT: Excuse me. I will exercise a preemptory [sic] challenge, Your Honor.

Before another juror had been seated, Vanessa Ferguson, another black member of the venire, was called. After ascertaining that she did not know the defendant or his counsel; that she did not oppose capital punishment; that she had "no strong feelings one way or the other about homosexuality"; and that neither she, a relative, nor a friend had been either a police officer or a victim of a crime, Mr. Rebert exercised a peremptory challenge to exclude her. The defense objected and the following exchange occurred:

> MR. HARRIS: Your Honor, we oppose the Commonwealth's exercising this particular challenge. We believe he has exercised it because this particular Juror is black, the same race of the Defendant.
>
> In the Commonwealth's question of the Juror about the death penalty, I think she indicated if the evidence showed that, she could vote that way. Of course, I don't think the Commonwealth has any real reason other than race in this particular case to exercise said challenge. So we oppose it.
>
> MR. REBERT: Your Honor, preemptory [sic] challenges are sometimes arbitrary and even capricious by definition. I have a basis for challenging this Juror. There is no challenge for cause. I have a right to a preemptory [sic] challenge and I'm going to exercise it. If I have to state all my reasons on the record, I would be happy to.
>
> THE COURT: The Courts have already ruled -- the appellate Courts have already

(..continued)

> THE COURT: Fine. . . .

A. 25-26 (Appeal No. 92-7139).

> ruled that preemptory [sic] challenges are
> preemptory [sic] challenges; and as far as
> the Court is concerned, the preemptory [sic]
> challenge is just that.  . . .  We will not
> question either side's preemptory [sic]
> challenges.

A. 37-38 (Appeal No. 92-7139).

The remaining black member of the venire, Lucius Breland, was not called until a jury had been seated and the court was attempting to find alternates.  He testified unambiguously that he could not impose the death penalty even if he believed it to be called for under the judge's instructions. The prosecutor challenged for cause and Mr. Breland was excused by the court.

The defense renewed its Batson challenge in a post trial motion, but to no avail.  Having exhausted his state appeals, the defendant began a habeas corpus proceeding in the District Court for the Middle District of Pennsylvania based on 28 U.S.C. § 2254.  The district court accepted the trial court's post trial conclusion that the defendant had failed to make a prima facie showing under Batson and denied the writ of habeas corpus.  The defendant appealed to this court.

After recounting the facts and the history of the proceedings, this court held that the district court had erred in finding itself bound by the state court's conclusion that no prima facie case of discrimination had been presented under Batson v. Kentucky, 476 U.S. 79 (1986).  It then noted information supplied by counsel at oral argument:

At oral argument before this court, both counsel indicated that the prosecutor is still available and could appear at a habeas corpus hearing in the district court. In response to a question from a member of the panel, counsel for the appellee stated: "Yes, the district attorney is available and as a practical matter that would be the most expeditious thing to do in these cases."

Johnson v. Love, No. 92-7139, Mem. Op., filed June 18, 1993, at App. 100. Based on this understanding, the court did not undertake an analysis of whether the record revealed a prima facie case of discrimination:

[W]e see no need to insist on a wooden adherence to a procedural process intended for the benefit of the state when a prosecutor chooses to proceed expeditiously and put a defendant's challenge to rest. In distinguishing a previous decision by this Court, the appellee's brief in the case at hand reads: "Here the District Attorney offered to place his reasons for the use of a peremptory challenge on the record at the time of the strike." Had that offer been accepted, it seems likely the issue presently before us would have long since been resolved.

We think that, in these circumstances, continuing uncertainty in this case can be resolved by a hearing in the district court at which time the prosecutor's offer can be accepted, albeit belatedly, without the necessity of inquiring into whether a prima facie case was established. After the prosecutor states his reasons for the peremptory strike, the district court may evaluate his explanation in light of Batson and its progeny.

App. 101-02.

On remand, Mr. Rebert was called to testify at an evidentiary hearing. He disclaimed any recollection of his reason or reasons for challenging specific jurors. He did offer the following comments on the voir dire process in this case:

A. . . . In this particular case . . . I was concerned about the victim and how potential jurors might feel about the victim, he was not a stellar type individual, and I had some concerns about the type of people who were going to sit in judgment on that case when this victim was involved in the kind of activity he was involved in.

Obviously, you, know, it was a pretty brutal crime, and I didn't think that the jurors would have much sympathy for the alleged perpetrators, but I was very much concerned that the victim maybe [sic] more of a factor than he should be in this crime.

Q. Given the victim's activity, whether there was any particular trait of a juror that you would deem antagonistic to the Commonwealth's goal of seeking a death penalty?

A. I don't know that I can say that for certain. I think I may have been a little bit reluctant, for lack of a better word, as far as the women were concerned because this was a very distasteful scenario. Any homicide obviously is distasteful, but I thought the facts of this case would cause one to be a little bit more sensitive than another to not react well to the Commonwealth and to the victim. That's a pretty generic statement, but that's about all as I recall about this selection process.

* * *

Q. Let's move to Vanessa Ferguson. The record shows that she was Commonwealth Strike No. 6, and she was black. Why did you strike her from the panel?

A. I do not specifically recall. I can say that I indicated on the record that I did have my reasons. I can say in all candor to the Court that those reasons were not race related in the sense that I was striking her simply because she was black. However, I cannot say that I specifically recall what those reasons were. As I said earlier, the victim of a crime was not an individual who I felt would get a lot of sympathy from people, certainly not a lot of sympathy from a young black girl; however, I cannot specifically recall the reason for my challenge.

App. 28-29, 30-31.

On cross examination, Mr. Rebert confirmed his lack of specific recollection:

Q. Well, in any event, the reasons that you were prepared to state to Judge Erb back in October of 1986 you cannot specifically recall those reasons right here today?

A. No, sir, I can't.

Q. And the notes that you might have made concerning what the strikes are are not in the file?

A. No, sir.

App. 33.

Mr. Rebert's testimony concluded with the following exchange:

THE COURT: Mr. Scullion, do you have any other examination of this witness?

MR SCULLION: No, Your Honor. The rest will be left to argument.

THE COURT:  Thank you very much, Mr. Rebert.

THE WITNESS:  If I may point something else out, Your Honor.  The other thing that perhaps has not been noted for the record, counsel for the Defendant was also black and that was another factor that I had to take into consideration when selecting a jury.  I certainly would not strike a black juror simply because the juror was black or because of the overall facts of this case and the fact that the subject was black and the attorney was black, that would not have been my reason for the strike.

App. 37-38.

The district court found that Mr. Rebert had no specific recollection as to his reason for excluding Ms. Ferguson.  It noted that Rebert purported to recall "an overall strategy of eliminating women from the jury panel 'due to the brutal nature of the crime and the non-sympathetic background of the victim.'"  App. 93.  The district court concluded, however, that this did not satisfy Batson's requirement of "a 'clear and reasonably specific' explanation of [the prosecutor's] 'legitimate reasons' for exercising" his peremptory challenge.  476 U.S. at 98 n.20.  The district court further concluded that, in light of the fact that the first five jurors seated, as well as one alternate, were women, this "proffered reason miserably fails to square with the actual events that transpired during voir dire."  App. 93.  Because the district court viewed the Commonwealth as having a burden under Batson of coming forward

with a non-discriminatory explanation of its challenge of Ms. Ferguson and because it rejected as pretext Mr. Rebert's speculation regarding his reason for that challenge, the district court ordered the release of the petitioner in the event he was not promptly retried.

## II.  BATSON STEP ONE:  Prima Facie Case

We begin with the holding of Batson and the teachings of Hernandez v. New York, 500 U.S. 352 (1991), concerning the procedure to be followed when the holding of Batson is invoked during voir dire.  Batson held that the prosecution violates the Equal Protection Clause of the Fourteenth Amendment when it exercises a peremptory challenge in a racially discriminatory way.  When a peremptory challenge is objected to on Batson grounds, a three step process ensues:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race . . . .  Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. . . .  Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

Hernandez, 500 U.S. at 358-59.  There is thus a threshold requirement before the court is to call upon the state to explain its challenge; the defendant must show that there is "some reason to believe that discrimination might be at work."  United States

v. Clemmons, 892 F.2d 1153, 1156 (3d Cir. 1989), cert. denied, 496 U.S. 927 (1990).

The Commonwealth argues before us that it has no duty under Batson to come forward with a non-discriminatory explanation. This is true, it maintains, because petitioner never presented a prima facie case under Batson. Petitioner counters that the prima facie case issue became moot when the prosecutor offered at trial to explain his reason for challenging Ms. Ferguson and that, in any event, the record reflects a prima facie case. We agree with the Commonwealth that the prosecutor's unaccepted offer at trial did not moot the prima facie case issue. We conclude, however, that the Commonwealth's renewed offer before this court and its acceptance rendered the prima facie case issue moot. We further conclude that, even if we were not bound under the applicable precedents to assume the existence of a prima facie case, the record in this case, taken as a whole, reflects one.

A.

As the plurality opinion of the Supreme Court in Hernandez indicates, the issue of whether the threshold requirement of a prima facie showing has been met becomes moot if the prosecution voluntarily places its explanation on the record and the trial court makes the rulings required at the second and third step of a Batson analysis:

> Once a prosecutor has offered a race-neutral
> explanation for the peremptory challenges and
> the trial court has ruled on the ultimate
> question of intentional discrimination, the
> preliminary issue of whether the defendant
> had made a prima facie showing becomes moot.

Hernandez, 500 U.S. at 359.

We applied this mootness rule in United States v. Uwaezhoke, 995 F.2d 388 (3d Cir. 1993), cert. denied, 114 S. Ct. 920 (1994), where the prosecutor, in response to a question from the court before it had ruled on the prima facie case issue, explained why he had exercised his peremptory challenge. We there observed:

> While we continue to stress the
> importance of the first step of Batson, we
> note that any issue regarding the existence
> of a prima facie showing of discrimination
> becomes moot where, as in this case, the
> prosecutor offers an explanation of the
> peremptory challenge before the district
> court has "expressly address[ed] the prima
> facie issue". In so holding, we follow the
> conclusion of the plurality in Hernandez
> . . . . If the government is found at any
> subsequent stage of the case either to have
> tendered an explanation that is not race
> neutral or to have acted with racial animus,
> the conviction must be overturned without
> regard to whether the defendant established a
> prima facie case.

Id. at 392.

We made a similar observation in United States v. Clemmons, 892 F.2d at 1156:

> [O]nce a prosecutor attempts to explain a
> peremptory challenge, we believe the trial
> and reviewing courts should look to the
> entire record to determine if intentional

discrimination is present.  If the
prosecutor's explanation raises more concern
than it puts to rest, courts cannot
effectively close their eyes to that fact by
simply deciding that the defendant has not
made out a prima facie case.

Petitioner urges that this case is like Hernandez,
Uwaezhoke, and Clemmons and that the prima facie case issue
became moot when Mr. Rebert voluntarily offered at trial to
explain his reasons for challenging Ms. Ferguson.  We believe
petitioner misreads those cases, however.  There is a substantial
difference between an explanation that is placed on the record
and subjected to judicial scrutiny and an offer to explain that
is rejected.  In each of these three cases, the court was
addressing a situation in which the prosecutor had explained his
challenge and the court had made a finding at trial as to whether
intentional discrimination had played a role.  In such
situations, a reviewing court must address the second and third
Batson issues, i.e., whether the prosecutor's articulated reasons
were race neutral and whether those reasons were a mere pretext
to hide intentional racial discrimination.  Where, as here, the
prosecutor offered to explain his reasons, but was prevented by
the court from doing so, we think the considerations that
prompted the mootness holding in Hernandez, Uwaezhoke, and
Clemmons are not implicated.

When the prosecutor has tendered an explanation and the
trial court has ruled on the neutrality and bona fides of that
explanation, the only circumstance in which the presence or

absence of a prima facie case could become legally relevant is where, at the post-trial motion or appellate review stages, there is room to debate the correctness of the trial rulings with respect to the neutrality of the explanation or the prosecution's good faith in representing that it was the true reason for the challenge.  In such circumstances, public confidence in the criminal process will be jeopardized if the reviewing court is permitted to avoid the ultimate issue of whether invidious discrimination occurred by relying on the absence of a prima facie case.

The same concern is not implicated where, as here, the prosecution offers to explain its challenge, but the trial court forecloses it from doing so and forges ahead with the trial.  In such circumstances, we do not believe that public confidence will be jeopardized if a reviewing court subsequently determines that the record provides no substantial reason to believe that discrimination may have occurred.

Contrary to the petitioner's suggestion, we do not read Hernandez, Uwaezhoke and Clemmons as holding that the prosecution always loses the right to rely upon the absence of a prima facie case whenever it voluntarily offers to explain, regardless of whether it was permitted to do so.  Moreover, we believe such a rule would be unfair.  Where the prosecutor is foreclosed by the court from putting his explanation on the record, in the absence of a prima facie case, there is simply no justification for

putting the burden on the state of coming forward with a satisfactory explanation in post-conviction relief proceedings that may occur many years after the conviction.

B.

These conclusions regarding the effect of the proceedings before the trial court do not end our mootness inquiry. The appellate proceedings in this case were unusual. While the Commonwealth's offer to explain its reasons for the preemptory challenge of Ms. Ferguson was not accepted by the trial court, that offer was renewed before this court and it was accepted in our earlier opinion. On remand, the Commonwealth attempted an explanation. The district court then concluded that the Commonwealth's explanation, in the words of the Clemmons court, "raise[d] more concern than it put[] to bed." 892 F.2d at 1156. At that point, the prima facie case issue clearly became moot under Hernandez, Uwaezhoke and Clemmons, and, accordingly, this court is no longer free to dispose of this matter on the basis of that issue.

As we explained in Uwaezhoke and Clemmons, to allow the absence of a prima facie case to be case dispositive when the record raises serious questions about the prosecutor's motivations would defeat one of Batson's principal purposes -- to provide assurance to the defendant and the community that criminal judgments are not tainted by invidious discrimination.

Where the record as a whole as ultimately developed permits a reasonable argument that the judgment is so tainted, the issue of taint must be resolved; it cannot be avoided by a finding that the defendant failed to present a prima facie case.  Accordingly, consistent with the teachings of Hernandez, Uwaezhoke and Clemmons, we can only proceed on the assumption that such a showing was made.  This means that the petitioner's conviction cannot stand in the absence of a race-neutral explanation from the Commonwealth for its exclusion from the petit jury of the second black venireperson.  Batson, 476 U.S. at 97.

C.

While we thus believe that our precedents require us to assume that petitioner made a prima facie showing of discrimination, we would be constrained to reach the same result even if we were free to address the prima facie case issue.  At a minimum, the rationale of the cases we have discussed would require us to consider the entire record, including the hearing on remand, in order to determine whether a prima facie case was present, i.e., whether there is reason to believe that discrimination may have been at work in this case.  When Mr. Rebert's remarks at that hearing are added to the other record evidence supporting an inference of discrimination, we conclude that there is enough evidence to require the Commonwealth to meet the explanation burden imposed by Batson.

As the Supreme Court pointed out in Batson, when making a Batson challenge, a member of a racial group that has traditionally been the victim of racial discrimination in our society is entitled to rely upon that history as well as on "the fact . . . that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" Batson, 476 U.S. at 96 (quoting Avery v. Georgia, 345 U.S. 559, 562 (1953)). In addition, one who objects to a challenge on the basis of Batson is entitled to rely on "any other relevant circumstances" tending to support an inference of discrimination. Id. at 96. When Mr. Rebert's challenge of Ms. Ferguson is put in context using the record as a whole, we believe there is substantial circumstantial evidence tending to support such an inference.

Mr. Rebert was prosecuting a case in which the defendant was black. It was also a case in which the defendant's attorney was black, and we know from Mr. Rebert's testimony during the remand hearing that this "was another factor that [he felt he] had to take into consideration when selecting a jury." App. 38. The crime involved in this case was one of violence, and both victims were white. The jury would learn that one of these victims had solicited sexual favors from young black boys. In such circumstances, a prosecutor still burdened with a stereotypical view of the world might well believe that a black

juror would be more sympathetic to the defendant and less sympathetic to the victims than would a white juror.

Six jurors had already been seated when Mr. Rebert was first presented with the choice between exercising a peremptory challenge and allowing a black person to sit as a juror. At that point, he still had more than six peremptory challenges remaining. It must have been apparent to him that he might well have the capability of causing the jury to be without black representation.

Mr. Rebert's first opportunity to challenge a black person came when Ms. Orr was called. He ascertained that she did not know the defendant or his counsel. He then asked about her views on capital punishment and received an answer that the court, at least, thought to be ambiguous. After the court had undertaken to seek clarification but before the matter had been clarified, Mr. Rebert exercised a peremptory challenge. While the Commonwealth understandably attributes this challenge to Ms. Orr's views on capital punishment, Mr. Rebert's failure to allow her to explain her views on that subject raises a question as to whether that was the basis of his decision. The trial record suggests no reasons for the challenge other than Ms. Orr's race and views on capital punishment.

The only other time Mr. Rebert was faced with a choice between exercising a peremptory challenge and letting a black person be seated as a juror, he once again exercised a peremptory

challenge. The trial record reveals nothing about Ms. Ferguson that might cause a prosecutor to be concerned about her objectivity.[2] When asked at the remand hearing about the challenge of Ms. Ferguson, Mr. Rebert could only indicate that he would not expect a "young black girl" to have a lot of sympathy for a man who solicited sexual favors from young black boys. He did not explain why he believed a young black girl would have less sympathy for such a person than a young white girl.

---

[2]. During the hearing on remand, Mr. Rebert indicated that he had reviewed the trial transcript and he referred the court to the following segment of the defense's questioning of Ms. Ferguson which, according to Mr. Rebert, gave him "cause for concern," App. 32:

> Q. I'm going to ask you a few questions; again, not to embarrass you. If the evidence -- you hear the evidence and the evidence showed that Mr. Johnson did not participate in the killing, participate in the beating, do you feel that you could vote an acquittal of not guilty in that case?
>
> A. I would have to hear the evidence.
>
> Q. Listen to my question. You heard the evidence, you listened to it and the evidence showed that he did not participate in the killing, he did not beat the man, do you feel that you could vote an acquittal of not guilty of that particular charge in that case?
>
> A. Yes, I could.

A. 35 (Appeal No. 92-7139). While petitioner was not the person who administered the beatings to the victims, we do not view Ms. Ferguson's answers as raising concern about her objectivity.

We are thus presented with a case in which a prosecutor harboring discriminatory views would not only have the opportunity to discriminate but would also have strong motivation for doing so. On both occasions when the prosecutor had the choice between excluding or including a black person, he chose exclusion. The record reveals nothing about either prospective juror that would clearly cause a prosecutor free of racial stereotyping to question his or her objectivity.

The circumstantial evidence we have cited does not mandate a conclusion that discrimination occurred, but the issue before us is whether there is sufficient reason to believe that discrimination may have been at work here to require the state to come forward with an explanation of its actions. We conclude that there is. We acknowledge the possibility that, if Mr. Rebert's memory of the trial was still intact, the Commonwealth might well have provided an innocent explanation. It is unfortunate that this is not the case, but the passage of time cannot fairly be laid at petitioner's feet and it would be even more unfortunate if petitioner's conviction were allowed to stand without the assurance of a bias-free trial that <u>Batson</u> requires.

### III. <u>BATSON STEP TWO: Race-Neutral Explanation</u>

Turning to the required second step in a <u>Batson</u> analysis, we are presented with two issues: (1) whether the Commonwealth's failure to produce a prosecutor with a specific

recollection concerning the reason for the challenge alone requires a conclusion that it has failed to meet its second-step burden of providing a race-neutral explanation, and (2) if not, whether the explanation tendered by the Commonwealth met that burden.

## A.

During the hearing before the district court, Mr. Rebert admitted that his memory had faded and that he could not specifically recall the reason for exercising a peremptory challenge against Ms. Ferguson.  The district court concluded that "[t]he prosecutor's failure to remember his reason for excluding Ferguson eliminates the need for the court to evaluate his reason under Batson and, more importantly, entitled Johnson to a new trial."  App. 90.  This case does not require that we rely on this view of the law, and we expressly decline to endorse it.

In Batson, the Court instructed that at the second step "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors."  476 U.S. at 97.  In Hernandez, the Court described this burden as the burden "to articulate a race-neutral explanation."  500 U.S. at 358-59.  Both of these descriptions came in the context of instructions on the state's burden at trial when a Batson objection is made and supported by a prima facie case.  In this context, the prosecutor

who has just made the peremptory challenge is present and his or her "articulation" of an explanation is, of course, competent evidence of the reason or reasons for the challenge.

Given the context of the Supreme Court's observations and the purpose of the state's burden at this stage, when a court is called upon to apply Batson in a post-trial context, as we are called upon to do here, we believe it must insist that the state not only articulate a race-neutral explanation but also come forward with competent evidence of the prosecutor's state of mind when making the challenge.[3]  We are unprepared to hold, however, that the state's burden can never be carried without direct evidence from the decisionmaking prosecutor regarding his or her state of mind.

There will undoubtedly be post-conviction relief proceedings in which the state, by reason of death, absence, or faded memory, will be unable to produce a prosecutor with a specific recollection of the reason for a challenge alleged to violate Batson.  Courts frequently are required to draw inferences from circumstantial evidence regarding a decision-maker's state of mind, however, and we are unwilling to rule out the possibility that the state may be able to satisfy its step

_____

[3].  The Court in Batson analogized the state's burden to that of the employer in an employment discrimination case after the plaintiff has tendered a prima facie case.  The employer's burden in that context, while frequently described as the burden of articulating a legitimate reason for the adverse employment action, is a burden of production.  St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2748 (1993).

two Batson burden by tendering circumstantial evidence.  In some post-conviction relief proceedings, it may well be possible to reach a reliable conclusion regarding the true reasons for the challenge based upon the nature of the case, the transcript of the voir dire of the challenged juror and other prospective jurors, contemporaneous notes of the attorneys involved, and any other available evidence.[4]

While we thus conclude that circumstantial as well as direct evidence can be used to carry the state's burden of production at the second step in a Batson analysis, Batson does require that the state's evidence, direct or circumstantial, be

---

[4].  While we have no occasion to comment here on the sufficiency of the state's evidence in United States v. Nicholson, 885 F.2d 481 (8th Cir. 1989), the Eighth Circuit Court of Appeals there held that the state had met its second step burden with circumstantial evidence.  The possibility that the state's burden may be met in this way was also recognized by the Court of Appeals for the Second Circuit in United States v. Alvarado, 923 F.2d 253, 256 (2d Cir. 1991).

The district court in this case relied on our opinion in Harrison v. Ryan, 909 F.2d 84 (3d Cir.), cert. denied, 498 U.S. 1003 (1990), for its holding that Johnson was automatically entitled to a new trial because of the prosecutor's failure to recall his reason for excluding Ferguson.  Harrison is distinguishable, however, because the prosecutor in that case offered no explanation for excluding one of the six black venirepersons he had struck from the jury, but simply asserted at a hearing before a federal magistrate that he could not recall his reasons.  It was based on the prosecutor's assertion that he did not know the reason he struck a black venireperson that this court affirmed the order for a new trial.  Id. at 987.  We do not read Harrison to suggest that a state cannot be permitted to reconstruct the prosecutor's rationale for excluding a juror during a later Batson hearing when the prosecutor admits to having no recollection of his motivations at the time.

such that, if credited, it will establish that invidious discrimination played no role in the prosecutor's challenge. Stated conversely, the Batson inquiry ends and the conviction must be vacated at the second stage of the analysis if the state's explanation is such that, taken at face value, it either demonstrates an equal protection violation, Uwaezhoke, 995 F.2d at 392, or would otherwise be inadequate as a matter of law to support the conviction. Batson, 476 U.S. at 98 (neutral explanation unrelated to the particular case to be tried or one consisting solely of the prosecutor's denial of discrimination inadequate as a matter of law). The state's circumstantial evidence in this case failed to meet this requirement.

B.

The explanation tendered by the Commonwealth at the remand hearing, even if taken at face value, does not provide assurance that race played no role in Mr. Rebert's decision to challenge Ms. Ferguson. During that hearing, Mr. Rebert testified that he was trying to strike jurors who might not be sympathetic with the petitioner's victim. He was especially concerned with the objectivity of women jurors because of the anticipated evidence at trial regarding the solicitation of homosexual favors from young black males by the victim. In explaining his reasons for striking Ferguson, Mr. Rebert said

> As I said earlier, the victim of the crime
> was not an individual who I felt would get a

> lot of sympathy from people, certainly not a
> lot of sympathy from a young black girl.

App. 31.

On its face, this explanation for the striking is not race-neutral. It is based on the assumption that Ms. Ferguson's objectivity would be impaired in part because she was black and because the deceased victim of petitioner's crime had victimized black children. We find this assumption indistinguishable in principle from an assumption that Ms. Ferguson's objectivity would be impaired because the defendant is black, an assumption that the Equal Protection Clause clearly forbids. Batson, 476 U.S. at 97. Both assumptions are based on a stereotypical view or intuition that black people, because of their race, will relate to other black persons in a way that may preclude them from basing a verdict solely on the relevant evidence. In somewhat similar circumstances, we have held that the state's explanation was not race-neutral. See Jones v. Ryan, 987 F.2d 960, 973-74 (3d Cir. 1993).

In addition, Mr. Rebert gave further testimony that precludes a finding that the Commonwealth's explanation was race-neutral. At the close of the hearing, he volunteered that counsel for the defendant was also black and that this was another factor that he "had to take into consideration when selecting a jury." App. 38. Although Mr. Rebert insisted that he would not have striken Ms. Ferguson because she was a member of the same minority group as the defendant and the defendant's

attorney, on its face, the quoted comment indicates to us that race did play a role in Mr. Rebert's decisions regarding peremptory challenges.

The facially race-based nature of Mr. Rebert's comments requires us to conclude that the Commonwealth has failed to meet its burden of providing a race-neutral explanation for the challenge of Ms. Ferguson.

## IV.

Accordingly, the judgment of the district court will be affirmed.