**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**TEDDY B. SMITH, Defendant**

Case No. SX-07-CR-041
Superior Court of the Virgin Islands
Division of St. Croix
November 5, 2010

15

16

MELISSA P. ORTIZ, ESQ., United States Department of Justice, Christiansted, St. Croix, USVI, *Attorney for the Plaintiff.*

WARREN B. COLE, ESQ., Hunter, Cole & Bennet, Christiansted, St. Croix, USVI, *Attorney for Defendant.*

DONOHUE, *Presiding Judge*

## MEMORANDUM OPINION

(November 5, 2010)

**BEFORE THE COURT** is Defendant Teddy B. Smith's Motion for Mistrial. Assistant Attorney General Melissa P. Ortiz appeared on behalf of the People of the Virgin Islands. Defendant appeared personally and through counsel, Attorney Warren B. Cole. For the reasons that follow, the Court will grant Defendant's Motion for Mistrial.

## I. BACKGROUND

Defendant is charged with one count of aggravated rape in the first degree in violation of section 1700(b) of title 14 of the Virgin Islands Code, two counts of rape in the first degree in violation of section 1701(2) of title 14 of the Virgin Islands Code, and three counts of assault in the first degree in violation of section 295(3) of title 14 of the Virgin Island Code. (Information, filed Feb. 14, 2007.)

Jury selection commenced on Monday, August 16, 2010, at approximately 11:00 a.m. One-hundred and one citizens from St. Croix were called for the venire. The Court conducted voir dire examination of the venire and excused approximately fifty-three jurors for cause. In advance of jury selection, and again near the end of voir dire, the Court requested and allowed the Parties to submit additional questions to ask of the venire, pursuant to Federal Rule of Criminal Procedure 24(a)(2)(B). The People did not submit any additional questions. Defendant submitted proposed questions twice, (*see* Def. Proposed *Voir Dire*, filed Aug. 11, 2010; Def. Proposed Jury Panel Voir Dire Questions, filed July 30, 2007), from which the Court, after consulting both parties, selected two additional questions to ask the venire. No further excusals occurred because of Defendant's questions.

After voir dire concluded, the Court asked the Parties to approach the bench to discuss for cause and peremptory challenges. Defendant challenged one juror for cause, which the Court subsequently denied. The People had no challenges for cause. Next, the Parties exercised peremptory challenges; the People struck six prospective jurors and the Defendant struck ten, as allotted by Federal Rule of Criminal Procedure 24(b)(2).

At the conclusion of the Parties' peremptory challenges, Defendant noted that the People had exercised all six of their peremptory challenges to strike only males from the petit jury. Defendant then moved for mistrial. In response, the People countered that their strikes were constitutionally valid. The Court reserved ruling on the motion, empanelled the jury and excused them for lunch, and then dismissed the remaining venire members. The Court then heard arguments from both Parties on Defendant's motion.

■ Defendant claims that the People struck jurors peremptorily based solely on their gender, in violation of his right to a fair and impartial jury as guaranteed under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.[1] The People claimed, as discussed further below, non-discriminatory bases for the exercise of their peremptory strikes. At the conclusion of the Parties' arguments, Defendant's attorney, after consultation with his client, decided not to move for a mistrial because Defendant, incarcerated since his arrest in 2007, was anxious to proceed to trial. Upon reconvening after lunch recess, the Court instructed the jury on their role in the trial and adjourned for the day.

Before trial reconvened the next morning, the Parties again met at Defendant's request to address further his motion for mistrial. Defendant's counsel indicated that Defendant had taken the evening to think the matter through further, and that upon reflection decided to exercise his right to move for mistrial based upon the People's exercise of their peremptory strikes. For the reasons that follow, the Court granted Defendant's motion, declared a mistrial, and dismissed the jury.

---

[1] Challenges to a prosecutor's use of her peremptory strikes sound in equal protection analysis, not due process. *See Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Therefore, the Court reviews Defendant's motion only under an equal protection analysis.

## II. DISCUSSION

█ The privilege of striking individual jurors through peremptory challenges "is subject to the commands of the Equal Protection Clause." *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Striking a juror peremptorily based solely on his gender, and nothing more, violates the Equal Protection Clause and is, therefore, unconstitutional. *J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127, 129, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994). This is because, "whether the trial is criminal or civil, potential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice." *Id.* at 128. As a protection afforded by the United States Constitution, prohibitions on gender-based peremptory strikes apply with the same force and effect in courts in the U.S. Virgin Islands as in any other court in the United States, though here through the protections afforded by the Revised Organic Act. Rev. Org. Act § 3 (1954) (codified as amended at 48 U.S.C. § 1561 (2000)) (applying the protections of Section 1 of Fourteenth Amendment to the Territory).

█ Courts conduct a three-part test when examining challenges to a party's use of their peremptory strikes. *Hardcastle v. Horn*, 368 F.3d 246, 255 (3d Cir. 2004). First, the party alleging the intentional discrimination in the exercise of a peremptory challenge must make a prima-facie showing of that purported discrimination. *J.E.B.*, 511 U.S. at 145. Defendant may base his prima facie case entirely on the actions of the prosecutor. *Hardcastle*, 368 F.3d at 255. Once the challenging party articulates his prima facie case of discrimination, the Court must determine whether that showing does, in fact, meet the requirements of a prima facie showing. *See generally Hernandez v. New York*, 500 U.S. 352, 359-60, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991). Courts employ a five-part test in determining whether a Defendant has met the prima facie showing. *See, e.g., Deputy v. Taylor*, 19 F.3d 1485, 1492 (3d Cir. 1994). This requirement of a prima facie showing is "a threshold requirement before the court is to call upon the state to explain its challenge; the defendant must show that there is 'some reason to believe that discrimination might be at work.' " *Johnson v. Love*, 40 F.3d 658, 663 (3d Cir. 1994) (quoting *United States v. Clemmons*, 892 F.2d 1153, 1156 (3d Cir. 1989)).

■ Second, if the Court concludes that the defendant has shown his prima facie case of discrimination, the People are then called upon "to explain the[ir] basis for the strike." *J.E.B.*, 511 U.S. at 145. In so doing, the People's proffered bases must rest "on a juror characteristic other than gender" and may not be "pretextual." *Id.* But the bases articulated by the People need not be persuasive or even plausible. *Hardcastle*, 368 F.3d at 257 (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995) (per curiam)). "At this step of the inquiry the issue is the *facial validity* of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed [gender] neutral." *Hernandez*, 500 U.S. at 360 (emphasis added). Here the burden on the prosecution is merely "of producing an explanation." *Hardcastle*, 368 F.3d at 257-58.

■ Finally, once the People articulate the bases for their peremptory strikes, the Court then proceeds "to the third step of [the] analysis to determine whether the [gender-]neutral and facially valid reason was, as a matter of fact, a mere pretext for actual discriminatory intent." *United States v. Uwaezhoke*, 995 F.2d 388, 392 (3d Cir. 1993). In evaluating the reasons proffered for the challenged peremptory strikes, "a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." *Hernandez*, 500 U.S. at 359. *See also Uwaezhoke*, 995 F.2d at 392 & n.3 (3d Cir. 1993). Proof of an equal protection violation is not demonstrated merely by a disproportionate impact on the petit jury; rather proof is required that shows "that the decisionmaker . . . selected a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Hernandez*, 500 U.S. at 360 (alterations in original) (quoting *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979)). Nevertheless, "[i]f the government's explanation, generally applied, would have a disparate impact on a particular [protected] group, this fact should cause a trial judge to exercise special scrutiny during the third step of the [*J.E.B.*] process to determine whether intentional discrimination, as a matter of fact, underlies the government's peremptory challenge." *Uwaezhoke*, 995 F.2d at 393. It is here where " 'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.' " *Hardcastle*, 368 F.3d at 258 (quotation unattributed in original).

## A. *Batson* Step One: Defendant's Prima Facie Showing

At the hearing on Defendant's motion, Counsel for the People stated that she was "prepared to offer the Court [her] reasons for striking each individual juror . . . ." (*Batson* Hr'g Tr. 3:19-20 Aug. 16, 2010.) As in *Hernandez*, the prosecution began proffering reasons for their peremptory challenges before the Court had "occasion to rule that [Defendant] had or had not made a prima facie showing of intentional discrimination, [thus] the preliminary issue of whether the defendant had made a prime facie showing bec[a]me[] moot." *Hernandez*, 500 U.S. at 359. *See also Uwaezhoke*, 995 F.2d at 392 ("While we continue to stress the importance of the first step of *Batson*, we note that any issue regarding the existence of a prima facie showing of discrimination becomes moot where . . . the prosecutor offers an explanation of the peremptory challenge before the [trial] court has expressly addressed the prima facie issue.") (internal quotations and alterations omitted).

The Court notes, however, that Defendant did highlight the statistical improbability that only mere chance was at play. In *J.E.B.*, for example, the Supreme Court of the United States found discrimination on the basis of gender where the prosecution had exercised their strikes against males in only nine out of ten peremptory challenges. *J.E.B.*, 511 U.S. at 129 ("After the court excused three jurors for cause, only 10 of the remaining 33 jurors were male. The State then used 9 of its 10 peremptory strikes to remove male jurors."). Here the People exercised all six of their peremptory challenges against males. "Happenstance is unlikely to produce this disparity." *Miller-El v. Dretke*, 545 U.S. 231, 241, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 342, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)).

█ Out of an abundance of caution, however, the Court will address here in brief the five-part test required in determining whether Defendant established his prima facie showing. *Deputy*, 19 F.3d at 1492. The factors the trial court must examine are: 1) the number of members of the cognizable group in the venire panel; 2) the nature of the crime; 3) the gender of the defendant and the victim; 4) the pattern of strikes against gender groups in the venire; and 5) statements of the prosecution during jury selection. *See id.*[2] The Court will address each factor below.

---

[2] The Court has adjusted the five factors to account for the present challenge based on gender.

### i. Members of the Cognizable Group in the Venire

One hundred and one citizens of St. Croix were selected as the venire panel. Out of that number, thirty were male and seventy-one were female.

### ii. Nature of the Crime

Defendant is charged with one count of aggravated rape in the first degree in violation of section 1700(b) of title 14 of the Virgin Islands Code, two counts of rape in the first degree in violation of section 1701(2) of title 14 of the Virgin Islands Code, and three counts of assault in the first degree in violation of section 295(3) of title 14 of the Virgin Islands Code. (Information, filed Feb. 14, 2007.) The Court takes note that "[a] plethora of studies makes clear that in rape cases, for example, female jurors are somewhat more likely to vote to convict than male jurors." *J.E.B.*, 511 U.S. at 148-49 (O'Connor, J., concurring) (citing Reid Hastie, Steven D. Penrod, and Nancy Pennington, *Inside the Jury*, 140-41 (1st ed. 1983)).

### iii. The Gender of the Defendant and of the Victim

The third factor requires the Court to consider the genders of the participants in this criminal matter. The Defendant, Teddy B. Smith, is male. (Information, filed Feb. 14, 2007.) The victim, J.D., is female. *Id.*

### iv. The People's Pattern of Strikes Against Gender Groups

Since the Court conducted voir dire itself, the Court was also the entity excusing jurors for cause until the Parties exercised peremptory and for cause challenges near the close of voir dire. As noted above, the People had no challenges for cause. During the peremptory phase, however, the People exercised all six of their strikes against male jurors. Thus, the People demonstrated a pattern of striking males from the venire and this fourth factor weighs heavily in establishing a prima facie case of discrimination. "The *Batson* opinion cites *Castaneda v. Partida*, 430 U.S. 482, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977), and thus indicates that statistical disparities are to be examined in determining whether a prima facie case has been established." *Jones v. Ryan*, 987 F.2d 960, 971 (3d Cir. 1993) (citing *Batson v. Kentucky*, 476 U.S. 79,95, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)).

### v. Statements and Questions of the People During Jury Selection

The fifth factor is not dispositive here because the Court, itself, conducts voir dire as allowed by the Federal Rules of Criminal Procedure. FED. R. CRIM. P. 24(a)(1) (applicable via SUPER CT. R. 7). During the for cause and peremptory challenges phase of voir dire, the Parties did engage in some discussion at the bench, but those discussions focused entirely on the verification of those jurors who had previously been excused for cause. Thus, the People made no statements during jury selection that the Court may refer to here.

██ Considering all five factors discussed above, the Court finds that a prima facie case of discrimination could be shown based on the nature of the case, the gender of the jurors stricken by the People, and the pattern of the People's peremptory strikes.

## B. *Batson* Step Two: People's Proffered Bases and Step Three: Court's Analysis

The six jurors the People struck peremptorily were Prospective Jurors ## 17, 20, 25, 38, 54, and 57. (*Batson* Hr'g Tr. 5: 14-16.) Below, the Court will examine and discuss each juror struck by the People and the bases articulated by them.

### i. Juror #17

In explaining her reasons for striking Juror #17, Counsel for the People proffered that she had challenged this juror because he had given her "a mean look . . . a not inviting look." *Id.* at 10:11. Counsel for the People expressed that Juror #17's look gave her "a bad feeling . . . ." *Id.* at 10:12. She further explained that the look she saw was one of "crazy eyes." *Id.* at 10:13.

██ Taken alone, the People's challenge of this juror might not reach a constitutionally-problematic threshold. The Court acknowledges that "a trial lawyer's judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses, derived from a juror's responses at voir dire or a juror's bare looks and gestures." *J.E.B.*, 511 U.S. at 148 (O'Connor, J., concurring) (internal quotations omitted) (quoting *Swain v. Alabama*, 380 U.S. 202, 220, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965)). Indeed, it is not the province of this or any court to

23

question the hunches or intuition attorneys rely upon. "That a trial lawyer's instinctive assessment of a juror's predisposition cannot meet the high standards of a challenge for cause does not mean that the lawyer's instinct is erroneous." *Id.* (citing V. Hale Starr & Mark McCormick, *Jury Selection* (1993)). Concomitantly, however, that does not mean attorneys may shield suspicious peremptories under the cloak of intuition or the guise of a hunch. Thus, the Court finds the People's explanation as to the peremptory challenge of Juror #17 to be pretextual, particularly when viewed alongside the five other jurors struck.

### ii. Juror #25

In explaining her reasons for striking Juror #25, Counsel for the People proffered "that it came out that [D]efendant at one time worked for Hovensa . . . . [A]lso I was concerned about the fact that he was from the Dominican Republic. I was looking more towards a native or a St. Croix person." (*Batson* Hr'g Tr. 5:23-6:3.) When Defendant's Attorney and the Court noted that Juror #25 did not speak during voir dire, *id.* at 7:1-6, Counsel for the People clarified that she had based her challenge on the juror qualification questionnaire, *id.* at 6:14-25. On that form, however, Juror #25 indicated his occupation as scaffold builder. Likewise, he indicated his place of birth as St. Lucia, not the Dominican Republic. Counsel for the People may have confused Juror #25 with Juror #17, who indicated his occupation as electrician, his employer as Hovensa, and his place of birth as Dominican Republic.

██ As indicated above, the People need only assert a facially-valid basis to survive a *Batson* challenge. That basis must not be pretextual, however. Although the Court could uncover no case that speaks to a *Batson* challenge where a prosecutor defended against her actions by asserting a discriminatory basis different than that challenged, to conclude that course of conduct constitutional would furrow the law's brow, to say the least. As the United States Court of Appeals for the Third Circuit has instructed, " 'What [*Batson*] means by a "legitimate reason" is not a reason that makes sense, but a reason that [at least] does not deny equal protection.' " *Hardcastle*, 368 F.3d at 258 (initial alteration in original) (quoting *Purkett v. Elem*, 514 U.S. 765, 768-69 (1995) (per curiam)). *But see United States v. DeJesus*, 347 F.3d 500, 514 (3d Cir. 2003) (Stapleton, J., dissenting) ("Parties may also exercise their peremptory challenges to remove from the venire any group or class of individuals

24

normally subject to 'rational basis' review.") (internal citations in original omitted).

Here Defendant claimed discrimination on the basis of gender by the People's use of their peremptory strike. The People responded by asserting, in essence, that no, they did not discriminate on the basis of gender as to this juror, but rather on the basis of his national origin. Justice cannot be so narrowly confined as to moot a Defendant's challenge because he pulled the wrong card from the deck of discrimination. Here Counsel for the People stated that she challenged Juror #25 because of his place of origin. She "was looking more towards a native or a St. Croix person." (*Batson* Hr'g Tr. 6:2-3.) Putting aside for the moment that Counsel for the People appeared to be "replac[ing] one discriminatory mode for another," *id.* at 6:4-5, and assuming *arguendo* its truthfulness as required at this stage, the bases proffered as to this juror cannot, on its own, survive pretextual scrutiny.

If the People were, in fact, seeking a jury of native or St. Croix persons, they should have also struck Empanelled Juror #2, who indicated her place of birth as Puerto Rico; or Empanelled Juror #4, who indicated her place of birth as Antigua; or Empanelled Juror #5, who indicated her place of birth as Grenada; or Empanelled Juror #7, who indicated her place of birth as St. Lucia; or Empanelled Juror #8, who indicated her place of birth as St. Vincent; or Empanelled Juror #9, who indicated her place of birth as Puerto Rico; or Empanelled Juror #11, who indicated her place of birth as St. Lucia; or even Empanelled Alternate Juror #1, who also indicated her place of birth as St. Lucia. Eight of the fourteen jurors empanelled by the Court — coincidentally all female — indicated that they, like this juror, were, at one point, not "native or St. Croix" people. In fact, of the fourteen empanelled jurors, only five indicated St. Croix as their birthplace: Jurors #3, #6, #10, #12, and Alternate #2. Thus, only thirty-five percent of the petit jury hailed by birth from St. Croix. "If a prosecutor's proffered reason for striking a [male] panelist applies just as well to an otherwise-similar [female] who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El*, 545 U.S. at 241. Thus, the Court finds Counsel for the People's explanation as to her peremptory challenge of Juror #25 to be glaringly pretextual.

### iii. Juror #20

In explaining her reasons for striking Juror #20, Counsel for the People proffered two bases: all of Juror #20's "children at home were over the age of 21 . . . [and h]e also listed no occupation on his jury questionnaire . . . . it was left blank . . . ." (*Batson* Hr'g Tr. 8:3-4, 7, 13.) Counsel for the People felt that she "just didn't know enough about that individual in particular." *Id.*

██ Juror #20 did indicate on his Juror Qualification Questionnaire that he had four children at home, ages 32, 28, 23, and 21. Likewise he did leave blank on his questionnaire question "8: Occupation." But if those items alone sufficed for exercise of a peremptory strike, the People should have also stricken Empanelled Juror #2. She also left her occupation blank. Similarly, two female empanelled jurors and one male indicated adult children living with them over the age of twenty-one. Empanelled Juror #3 indicated she had an adult child twenty-six years old at home with her. Empanelled Juror #6 indicated he had an adult child thirty-seven years old at home with him. Lastly, Empanelled Juror #7 indicated she had a twenty-two year old grandson living at home with her. Whether "[o]ut of choice, necessity, or a sense of family responsibility, it has been common for close relatives to draw together and participate in the duties and the satisfactions of a common home. . . . Especially in times of adversity, such as the death of a spouse or economic need, the broader family has tended to come together for mutual sustenance and to maintain or rebuild a secure home life." *Moore v. City of East Cleveland*, 431 U.S. 494, 504-05, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977). The Court cannot "accept as a defense to gender-based peremptory challenges 'the very stereotype the law condemns.' " *J.E.B.*, 511 U.S. at 138. "Whether or not such a household is established because of personal tragedy, the choice of relatives . . . to live together may not lightly be denied by the State." *Moore*, 431 U.S. at 505-06. The Court cannot sustain a purported pretextual peremptory challenge based on the familial structure of a prospective juror's home. Accordingly, the Court finds Counsel for the People's explanation as to her peremptory challenge of Juror #20 to be pretextual.

### iv. Juror #38

In explaining her reasons for striking Juror #38, Counsel for the People proffered that her reason for challenging him was because he was

twenty-years old and single. (*Batson* Hr'g Tr. 8:20-21.) She "was concerned that he was too young and didn't have any kids at home." *Id.* at 8:21-22.

 Juror #38 did indicate on his Juror Qualification Questionnaire that he was twenty years old, single, and had no children. But if those items alone sufficed for exercise of a peremptory strike, the People should have also stricken Empanelled Juror #1. She indicated her age as twenty-seven and also noted her marital status as single. Moreover, she did not indicate whether she had any children. Similarly, Empanelled Juror #2 indicated her age as twenty-three, though she did note her marital status as married with one child. The Court notes that a prosecutor might couch a preference for a more homogeneous jury by accentuating an innocuous characteristic (e.g., geography, age, socio-economic status, marital status) which, in the interest of so-called 'jury blending,' not coincidentally correlates to certain demographic realities and may serve to cleave one [gender] from another." *United States v. Milan*, 304 F.3d 273, 283 (3d Cir. 2002) (citing *Batson v. Kentucky*, 476 U.S. 79, 106, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) (Marshall, J., concurring). Nonetheless, the Court cannot uphold such an illogical result. The Court finds that Counsel for the People's explanation as to her peremptory challenge of Juror #38 was pretextual.

### v. Juror #54

In explaining her reasons for striking Juror #54, Counsel for the People stated that "he was a retired 68 year old, no children at home and just stated he was retired and also that his spouse was retired. And I just was concerned that I didn't know enough about his background and that's why I really didn't want him on the jury." (*Batson* Hr'g Tr. 9:3-7.)

Juror #54 did indicate on his Juror Qualification Questionnaire that he was 68 years old, retired, and that his spouse was also retired. He also did indicate that he and his wife had no children living at home. But if that were a sufficient basis for the exercise of a peremptory strike, the People should have also stricken Empanelled Juror #3 who also listed her occupation as retired and her age as 61. If occupation had been the concern, then the People should have also challenged Empanelled Juror #5, who listed her occupation as unemployed, or Empanelled Alternate Juror #1, who listed her occupation as "housewife." Being unemployed and being a housewife are akin to being retired in that one need not report

27

to an employer each day. If knowing enough about jurors' backgrounds, including employment backgrounds, were truly a concern, Counsel for the People also should have stricken Empanelled Juror #9, who listed her occupation as "None."

██ ██ "Age, unlike race [or gender], is not subject to 'strict [or heightened] scrutiny' in the traditional equal protection framework, and therefore does not warrant the same safeguards with respect to jury selection." *United States v. Edwards*, 264 Fed. Appx. 139, 144 (3d Cir. 2008) (citing *Pemberthy v. Beyer*, 19 F.3d 857, 870-71 (3d Cir. 1994)). Thus, if Counsel for the People were, in fact, concerned with age as a basis for her peremptory strikes, she should have also stricken Empanelled Juror #3, noted above, who listed her age as 61; or Empanelled Juror #7, who did not list her age but only her date of birth, making her 63 years old; or Empanelled Juror #9, who listed her age as 60; or Empanelled Alternate Juror #1, who listed her age as 60 as well. In fact, Empanelled Juror #10 mirrors Juror #54 demographically — occupation retired and age 66 — but was not challenged by the People, further confounding understanding of how the basis asserted here was not pretextual. It is difficult to credit an "explanation, which reeks of afterthought." *Miller-El*, 545 U.S. at 246. Thus, the Court finds Counsel for the People's explanations as to her peremptory challenge of Juror #54 to be pretextual.

### vi. Juror #57

In explaining her reasons for striking Juror #57, Counsel for the People proffered that "he was a 56 year old, older security officer, supervisor per his questionnaire . . . . I didn't want any . . . wanna-be police officers on the case." (*Batson* Hr'g Tr. 9:9-12.) Counsel for the People also expressed concern that "his family or himself were involved in some civil suit in District Court in 2004, but [Juror 57] didn't give the entire title of the suit . . . . I didn't know what that was about and that raised a red flag for me." *Id.* at 9:22-10:2.

██ Juror #57 did indicate on his Juror Qualification Questionnaire his occupation as "acting security shift supervisor." But if that had been a sufficient basis for the exercise of a peremptory strike, the People should have also challenged Empanelled Juror #3, who although retired indicated on her questionnaire that she had worked within the past five years as a

28

revenue officer with Elite Security, Inc. Here too this explanation smacks of afterthought.

> [W]hen illegitimate grounds like race [or gender] are in issue, a prosecutor simply has got to state h[er] reasons as best [s]he can and stand or fall on the plausibility of the reasons [s]he gives. A *Batson* challenge does not call for a mere exercise in thinking up *any rational basis*. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge . . . can imagine a reason that might not have been shown up as false.

*Miller-El*, 545 U.S. at 252 (emphasis added).

## III. CONCLUSION

For the reasons stated above, the Court finds that each of the bases asserted by the People failed to refute Defendant's prima facie showing of intentional discrimination based on gender. Moreover, the People employed other unconstitutional bases like family or marital statuses or national origin in their attempt to refute Defendant's prima facie showing of intentionally-based gender discrimination. But to no avail. For each male juror struck peremptorily by the People, another juror, and oftentimes more than one, who was female, had the exact or strikingly similar background and went unchallenged.

The use of peremptory challenges remains problematic in our court systems. *See generally Miller-El v. Dretke*, 545 U.S. 231, 266-273, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (Breyer, J., concurring). This is, in part, because "[discrimination in jury selection, whether based on race or on gender, causes harm to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process." *J.E.B.*, 511 U.S. at 140. "When state actors exercise peremptory challenges in reliance on gender stereotypes, they ratify and reinforce prejudicial views of the relative abilities of men and women . . . . [and] 'invites cynicism respecting the jury's neutrality and its obligation to adhere to the law.' " *Id.* (quoting *Powers v. Ohio*, 499 U.S. 400, 412, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991)). That risk of cynicism is "particularly acute in cases where gender-related issues are prominent, such as cases involving rape. . . . Discriminatory use of peremptory challenges may create the impression that the judicial system has

29

acquiesced in suppressing full participation by one gender or that the 'deck has been stacked' in favor of one side." *Id.* (quoting *Powers v. Ohio*, 499 U.S. 400, 412, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991)). In this rape trial, the People's "strikes correlate with no fact as well as they correlate with [gender] . . . ." *Miller-El*, 545 U.S. at 266. Accordingly, Defendant's Motion for Mistrial will be granted under order of even date.