**STATE of Missouri, Respondent,**

v.

**Marcellus WILLIAMS, Appellant.**

**No. SC 83934.**

Supreme Court of Missouri,
En Banc.

Jan. 14, 2003.

As Modified on Denial of Rehearing
March 4, 2003.

Rosemary E. Percival, Assistant State Public Defender, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Assistant Atty. Gen., for Respondent.

RICHARD B. TEITELMAN, Judge.

A jury convicted Marcellus Williams of one count of first degree murder, first degree burglary, and first degree robbery, and two counts of armed criminal action. Williams was sentenced to death on the murder conviction. Because Williams was sentenced to death, this Court has exclusive appellate jurisdiction under article V, section 3, of the state constitution. The judgment is affirmed.

## BACKGROUND

On direct appeal, this Court accepts as true all evidence favorable to the verdict, including all favorable inferences from the evidence. *State v. Wolfe*, 13 S.W.3d 248, 252 (Mo. banc 2000). Viewed in the light most favorable to the verdict, the evidence is as follows:

On August 11, 1998, Williams drove his grandfather's Buick LeSabre to a bus stop and caught a bus to University City. Once there, he began looking for a house to break into. Williams came across the home of Felicia Gayle. He knocked on the front door but no one answered. Williams then knocked out a window pane near the door, reached in, unlocked the door, and entered Gayle's home. He went to the second floor and heard water running in the shower. It was Gayle. Williams went back downstairs, rummaged through the kitchen, found a large butcher knife, and waited.

Gayle left the shower and called out, asking if anyone was there. She came down the stairs. Williams attacked, stab-

bing and cutting Gayle forty-three times, inflicting seven fatal wounds. Afterwards, Williams went to an upstairs bathroom and washed off. He took a jacket and put it on to conceal the blood on his shirt. Before leaving, Williams placed Gayle's purse and her husband's laptop computer and black carrying case in his backpack. The purse contained, among other things, a St. Louis Post–Dispatch ruler and a calculator. Williams left out the front door and caught a bus back to the Buick.

After returning to the car, Williams picked up his girlfriend, Laura Asaro. Asaro noticed that, despite the summer heat, Williams was wearing a jacket. When he removed the jacket, Asaro noticed that Williams' shirt was bloody and that he had scratches on his neck. Williams claimed he had been in a fight. Later in the day, Williams put his bloody clothes in his backpack and threw them into a sewer drain, claiming he no longer wanted them.

Asaro also saw a laptop computer in the car. A day or two after the murder, Williams sold the laptop to Glenn Roberts.

The next day, Asaro went to retrieve some clothes from the trunk of the car. Williams did not want her to look in the trunk and tried to push her away. Before he could, Asaro snatched a purse from the trunk. She looked inside and found Gayle's Missouri state identification card and a black coin purse. Asaro demanded that Williams explain why he had Gayle's purse. Williams then confessed that the purse belonged to a woman he had killed. He explained in detail how he went into the kitchen, found a butcher knife, and waited for the woman to get out of the shower. He further explained that when the woman came downstairs from the shower, he stabbed her in the arm and then put his hand over her mouth and stabbed her in the neck, twisting the knife as he went. After relaying the details of

the murder, Williams grabbed Asaro by the throat and threatened to kill her, her children and her mother if she told anyone.

On August 31, 1998, Williams was arrested on unrelated charges and incarcerated at the St. Louis City workhouse. From April until June 1999, Williams shared a room with Henry Cole. One evening in May, Cole and Williams were watching television and saw a news report about Gayle's murder. Shortly after the news report, Williams told Cole that he had committed the crime. Over the next few weeks, Cole and Williams had several conversations about the murder. As he had done with Laura Asaro, Williams went into considerable detail about how he broke into the house and killed Gayle.

After Cole was released from jail in June 1999, he went to the University City police and told them about Williams' involvement in Gayle's murder. He reported details of the crime that had never been publicly reported.

In November of 1999, University City police approached Asaro to speak with her about the murder. Asaro told the police that Williams admitted to her that he had killed Gayle. The next day, the police searched the Buick LeSabre and found the Post–Dispatch ruler and calculator belonging to Gayle. The police also recovered the laptop computer from Glenn Roberts. The laptop was identified as the one stolen from Gayle's residence.

Williams was tried for Gayle's murder and convicted. On appeal, Williams alleges ten points of trial court error relating to evidentiary rulings, voir dire, instructional error, and closing argument. He does not challenge the sufficiency of the evidence.

## I. Evidentiary Rulings

### A. *Rule of Completeness*

 Williams argues that the trial court erred by refusing to allow defense counsel

to elicit Glenn Roberts' hearsay testimony that Williams told him he was selling the laptop computer on behalf of Laura Asaro. By not allowing Roberts to testify to Williams' hearsay statements, Williams maintains that the trial court violated the rule of completeness by taking the transaction out of context and allowing the jury to draw the inaccurate inference that he obtained the computer by committing the charged crimes.

■ Trial courts have broad discretion to admit or exclude evidence at trial. Appellate courts review decisions to admit or exclude evidence for abuse of discretion. *State v. Mayes*, 63 S.W.3d 615, 627 (Mo. banc 2001).

During the guilt phase, the state elicited testimony from Glenn Roberts regarding his acquisition of the laptop from Williams. Roberts testified that Williams sold him the laptop in August of 1998. On cross-examination, defense counsel tried to elicit hearsay testimony from Roberts regarding Williams' alleged statement that he was selling the laptop on behalf of Laura Asaro. The state objected that Roberts' testimony regarding Williams' statement was inadmissible hearsay. Defense counsel argued that the testimony was admissible under the rule of completeness:

[Defense Counsel]: Judge, it is relevant as to what the agreement was and who he actually believed was in ownership or possession of this computer. It goes to the completeness doctrine.

[COURT]: Who had possession? To his state of mind who was in possession of the computer?

[DEFENSE COUNSEL]: Who was in possession of the computer. [Roberts] is going to say that he received the computer on behalf of Marcellus through Laura. Laura—this witness is going to say it was Laura that—

[COURT]: How would we know that?

[DEFENSE COUNSEL]: Because Marcellus told him that.

[COURT]: Then Marcellus can tell us that. You are attempting to get in self-serving hearsay statements. The objection is sustained.

■ When the State introduces part of a confession or admission into evidence, the defendant is authorized to introduce the remaining portion, although it may be self-serving. *State v. Collier*, 892 S.W.2d 686, 695 (Mo.App.1994); *State v. Easley*, 662 S.W.2d 248, 252 (Mo. banc 1983). The rule is violated only when admission of the statement in an edited form distorts the meaning of the statement or excludes information that is substantially exculpatory to the declarant. *State v. Skillicorn*, 944 S.W.2d 877, 891 (Mo.1997).

Through Roberts' testimony, the state established the fact that Williams was in possession of the laptop and that he sold it to Roberts shortly after Gayle's murder. The prosecutor did not ask Roberts about any statements that Williams made to him. The questions were limited to the mechanics of the transaction. Although Roberts did volunteer that Williams told him he was selling the computer because of financial difficulties, the trial court sustained the state's objection that Roberts' answers were nonresponsive. The state does not waive its objection to hearsay evidence on cross-examination because a witness volunteered an unsolicited remark during direct examination. *State v. Riggins*, 987 S.W.2d 457, 465 (Mo.App.1999).

Because the state did not introduce into evidence any statements or confessions Williams made to Roberts during the sale of the laptop, the rule of completeness does not apply. Additionally, Williams was not precluded from showing that Laura once had possession of the laptop. He

introduced testimony from two witnesses who said they saw Laura with a laptop computer during the summer of 1998. The trial court did not abuse its discretion in sustaining the State's objection to Roberts' hearsay testimony.

### B. *Evidence of Attempted Escape*

██ Williams alleges that the trial court abused its discretion by overruling his objection to evidence regarding Williams' attempt to escape from the St. Louis City workhouse. The state's evidence showed that Williams attempted to escape approximately three weeks after he had been indicted on multiple charges, including the first-degree murder of Felicia Gayle. The evidence also showed that on the day of the attempted escape, Williams had been sentenced to twenty years in prison on separate charges. During the escape, Williams assaulted a guard with a metal bar. The state introduced testimony describing Williams' assault and the injuries he inflicted on the guard. Williams argues that the escape evidence should have been excluded because it was inadmissible evidence of uncharged crimes. He also argues that because he was facing other charges at the time, the fact that he attempted to escape does not show any consciousness of guilt regarding Gayle's murder.

██ Evidence of escape is admissible as bearing on defendant's consciousness of guilt as to pending charges. *State v. Hughes,* 596 S.W.2d 723, 729 (Mo. banc 1980); *State v. Middleton,* 998 S.W.2d 520, 528 (Mo. banc 1999). Such evidence is admissible even though the escape attempt may constitute a separate uncharged crime. *State v. Holt,* 465 S.W.2d 602, 607 (Mo.1971). Escape evidence is also admissible when the defendant is being held on multiple charges at the time of the escape. *Id.* The existence of circumstances indicating the escape was not motivated by con-

sciousness of guilt may be considered by the jury to reduce the weight of the escape evidence, but it does not render the escape evidence inadmissible. *Hughes,* 596 S.W.2d at 729. Whether the escape was motivated by a consciousness of guilt or another reason is a question for the jury. *State v. Thompson,* 985 S.W.2d 779, 789 (Mo. banc 1999).

### C. *Motion to Suppress*

██ Williams alleges the trial court erred in failing to sustain his motion to suppress evidence of the Post–Dispatch ruler and a calculator seized during a warrantless search of the Buick he was driving on the day of the murder. The police relied upon consent given by Williams' grandfather, Walter Hill. Williams argues that the trial court erred in denying his motion because Hill did not have authority to consent to the search.

██ The trial court's decision to suppress evidence will not be reversed unless it is clearly erroneous. *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990). The evidence presented on a motion to suppress is reviewed in the light most favorable to the ruling. *State v. Bittick,* 806 S.W.2d 652, 654 (Mo. banc 1991). Evidence and inferences contrary to the order are disregarded. *State v. Kinkead,* 983 S.W.2d 518, 519 (Mo. banc 1998).

The evidence shows that the police went to Hill's residence and informed him that Williams was a suspect in a crime. The police asked Hill for permission to search the Buick, which was parked on a lot adjacent to Hill's residence. Hill stated that he was the owner of the vehicle and consented to the search. Based upon Hill's statement, the police had a reasonable basis to believe that Hill actually owned the vehicle, thus rendering the search valid. *United States v. Gillette,* 245 F.3d 1032,

1033 (8th Cir.2001). The trial court did not clearly err in denying Williams's motion.

## D. *Victim Impact Evidence*

 Williams argues that the trial court erred by allowing the state to elicit excessive victim impact evidence. He also argues that the state's evidence of other crimes constituted victim impact evidence from other crimes in violation of section 565.030.4.

Because Williams did not object at trial, review is only for plain error. Rule 30.20. Plain error affecting substantial rights may be considered if it appears that the alleged error so substantially affected defendant's rights that a miscarriage of justice or manifest injustice would occur if the error is not corrected. *Id.*

During the penalty phase, the state offered victim impact evidence from seven witnesses. The state also introduced photos of Gayle and her family, programs from the memorial service, birthday and holiday cards Gayle had sent her family, and a letter Gayle wrote concerning the disposition of her personal items in the event of her death. Williams did not object to any of this evidence.

 Victim impact evidence is admissible and may include, within the discretion of the court, evidence concerning the impact of the crime on the family of the victim and others. *State v. Storey*, 40 S.W.3d 898, 909 (Mo. banc 2001); section 565.030.4. Victim impact evidence is relevant to the jury's decision as to whether the death penalty is warranted. *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Victim impact evidence violates the Constitution only if it is so prejudicial that it renders the trial fundamentally unfair. *Storey*, 40 S.W.3d at 909. Previous cases have upheld victim impact evidence nearly identi-

cal to that presented in this case. *State v. Storey*, 40 S.W.3d 898, 909 (Mo. banc 2001). The trial court did not plainly err by admitting the victim impact evidence.

 The state also introduced evidence regarding Williams' robberies of a bakery and a fast food restaurant and from a homeowner whose residence Williams had burglarized. Williams argues that this evidence constitutes victim-impact evidence from previous convictions. It does not. In a death penalty trial, the defendant's character and prior record are central issues of the penalty phase. *State v. Whitfield*, 837 S.W.2d 503, 511 (Mo. banc 1992). The jury must weigh the aggravating circumstances against the mitigating circumstances. To appropriately weigh prior convictions, the facts of those convictions may be necessary. *Id.* Therefore, the state may introduce evidence detailing the circumstances of prior convictions during the penalty phase. *State v. Cole*, 71 S.W.3d 163, 174 (Mo. banc 2002). The trial court did not abuse its discretion in allowing the state to present evidence of Williams' prior convictions.

## II. VOIR DIRE

### A. *The Three–Door Analogy*

 Williams argues that the trial court plainly erred by allowing the prosecutor to employ an analogy to explain to the venire the assessment of punishment in a capital murder case. The prosecutor described the decision-making process as a hallway having three doors. The first door was the "guilt or innocence door" in which the jury decides if the defendant is guilty of first degree murder. The second door was described as the "special or aggravating circumstance door" in which the venire was told the jury must decide if the state proved an aggravating circumstance beyond a reasonable doubt. The third

door was described as the "death penalty door" at which time the jury would have to assess all aggravating and mitigating evidence and determine if death was warranted.

Williams argues that the three door analogy is fatally flawed because it leaves out a critical step; namely, the Section 565.030.4(2) requirement that the jury unanimously find the existence of a statutory aggravating factor and that this factor warrants the death penalty. Because Williams did not object at trial, review is for manifest injustice under the plain error rule. Rule 30.20.

Williams has not demonstrated manifest injustice. First, the state made it clear that the analogy was not an instruction on the law and was only a general explanation. Second, prior to the death qualification voir dire, the trial court read to the jury MAI–CR 3d 302.03, which describes the process followed in a capital murder case. Finally, prior to deliberations, the trial court instructed the jury pursuant to MAI–CR 3d 313.41A on the findings it must make before returning a death sentence. This instruction clearly tells the jury it must unanimously find beyond a reasonable doubt one or more statutory aggravating factors and that the factors warrant the death penalty. Taken together, the state's explanation of the purpose of the analogy and the instructions given to the venire and the jury before deliberations corrected any misunderstanding by the jury of the process for deciding on the death penalty. There was no manifest injustice.

## B. *Batson Challenges*

■ Williams argues that trial court erred in overruling his *Batson* challenge to the state's peremptory strike of three African–American venirepersons. This Court will reverse the trial court's decision on a *Batson* challenge only upon a showing of clear error. *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992).

■ To establish a claim under *Batson,* the defendant must object to the prosecutor's use of peremptory challenges as violating Batson and identify the cognizable racial group to which the stricken veniremember belongs. *State v. Parker,* 836 S.W.2d at 939; *State v. Marlowe,* 89 S.W.3d 464, 468 (Mo. banc 2002). The state then must provide a race-neutral explanation for the peremptory challenge. *Id.* The state's reasons for strike need only be facially race-neutral unless discriminatory intent is inherent within the explanation. *State v. Brooks,* 960 S.W.2d 479, 488 (Mo. banc 1997). The explanation will be deemed race-neutral, even if it is not persuasive. *Id.* If the prosecutor articulates a reason, the defendant must prove that the state's proffered reason was merely pretextual and that the strike was in fact racially motivated. *Id.*

### *Venireperson 64*

■ The state articulated three race-neutral reasons to justify striking venireperson 64 from the venire panel. The prosecutor first explained that the venireperson's earrings and clothing indicated that he was "trying to be different" and was "liberal." Striking a prospective juror based upon clothing and attire is does not reflect an inherent racial bias motivating the strike.

Second, the prosecutor's stated that the venireperson's demeanor and appearance were similar to Williams. Williams cites *Johnson v. Love,* 40 F.3d 658, 660 (C.A.3 1994) to argue that striking the venireperson based upon physical appearance was inherently race-based because both he and Williams are African–American. *Johnson* does not support Williams' argument. In *Johnson,* the court found that the prosecu-

tor's explanation for a strike was not race-neutral because the prosecutor said that the white defendant would not be a sympathetic figure for a "young black girl." *Id.* at 662. Unlike Johnson, this case does not involve an overt, racially motivated reason for the strike. Instead, the prosecutor stated that the venireperson resembled Williams, had the same glasses, and had a similar demeanor. These reasons are not inherently race based.

Finally the prosecutor stated that he struck the venireperson because of he was a postal employee. Employment is a valid race-neutral basis for striking a prospective juror. *State v. Smulls,* 935 S.W.2d 9, 15–16 (Mo.banc 1997).

### Venireperson 65

The prosecutor struck venireperson 65 because he was not "definite enough" on whether he could consider the death penalty and because he was court-martialed while in the military for stealing money. Both of these reasons are race-neutral and are supported by the record. The venireperson stated that he "can't see any differences" between life in prison and the death penalty or how you "weigh or judge those." Even though the venireperson stated that he could consider the death penalty, the rationale given by the prosecutor was race-neutral and supports a peremptory strike. The venireperson's criminal history is also a race-neutral basis for a peremptory strike.

### Venireperson 72

The prosecutor struck venireperson 72 because he was fired from his job for physically attacking a fellow employee and because he appeared upset after other jurors laughed at him as he answered the prosecutor's questions concerning that incident. These are racially neutral explanations for the strike.

## III. Instructional Error

### A. *Juror Notetaking*

Williams argues that the trial court plainly erred by failing to submit a written instruction regarding juror notetaking. Because Williams did not object at trial, review is only for plain error. Rule 30.20. Plain error affecting substantial rights may be considered if it appears that the alleged error so substantially affected defendant's rights that a miscarriage of justice or manifest injustice would occur if the error were not corrected. *Id.*

If jurors are allowed to take notes, MAI–CR 3d 302.01 requires the trial court to both read an instruction and include a written instruction regarding notetaking. Jurors are instructed that if they choose to take notes, they are not to discuss the notes with anyone else, that notes are not evidence and that notetaking may interfere with observation of the proceedings. Although the trial court failed to provide the jury with a written instruction on notetaking, the court did read the instruction to the jury. By reading the appropriate instruction, the trial court provided the jury with sufficient guidance regarding the proper role of notetaking. The failure to include a written instruction, though technically erroneous, was not plain error. There was no miscarriage of justice as the jury was read the proper instruction.

### B. *Accomplice Instruction*

Williams argues that the trial court erred in refusing to submit an instruction containing the section 565.031.3(4) statutory mitigator that Williams was an accomplice in the murder or played only a minor role in the crime. A statutory mitigator should be given upon the defendant's request if there is evidence to support the mitigating circumstance. Missouri law does not require proof that a

mitigating circumstance exists; it requires only some supporting evidence. *Delo v. Lashley*, 507 U.S. 272, 277, 113 S.Ct. 1222, 122 L.Ed.2d 620 (1993).

Williams points to evidence of several unidentified hairs and shoe prints that were found at the murder scene and to testimony that Asaro was seen with a laptop computer after Williams was incarcerated on August 31, 1998. This evidence does not support Williams' proffered instruction.

There was evidence that several workmen had been in Gayle's home in the month before the murder. Furthermore, Gayle's husband testified that hundreds of guests had visited their home over the years and that the carpets had never been professionally cleaned. There was also testimony that people lose a hundred or more hairs every day. The existence of several unidentified hairs thus shows nothing more than the coming and going of numerous visitors over the years. It does not show that someone else committed the crime or that Williams' participation was minor.

Likewise, the unidentified shoe impressions do not support an accomplice instruction. Williams' expert testified that several shoe impressions, including some made in blood, were found near the body. The expert initially testified that the impressions were made by two different shoes. However, on cross-examination, he conceded that the same shoe made all the impressions. Moreover, both Cole and Asaro testified that Williams told them he was alone when he killed Gayle. Evidence that one set of shoe impressions was found near the body does not support an instruction that Williams was an accomplice.

Finally, the testimony that Asaro was seen carrying a laptop computer does not show that Asaro was an accomplice. It shows only that she was carrying an un-identified laptop computer and is not sufficient to support an accomplice instruction.

### C. *Statutory Aggravators*

Williams contends the trial court erred in overruling his objection and submitting to the jury an instruction listing ten statutory aggravating circumstances. The jury found the existence of all ten circumstances: (1) whether the murder involved depravity of mind; (2) whether the murder was committed during a burglary; (3) whether the murder was committed during a robbery; (4) whether Williams murdered Gayle in order to receive money or something of value from her; (5) whether the murder was committed in order to prevent the lawful arrest of Williams; (6) whether Williams was convicted of second degree assault on April 13, 1998, in the Circuit Court of the City of St. Louis; (7) whether Williams was convicted of first degree robbery on January 28, 2000, in the Circuit Court of the City of St. Louis; (8) whether Williams was convicted of armed criminal action on January 28, 2000 in the Circuit Court of the City of St. Louis; (9) whether Williams was convicted of first degree robbery on May 25, 2001 in the Circuit Court of the City of St. Louis; and, (10) whether defendant was convicted of armed criminal action in the Circuit Court of the City of St. Louis on May 25, 2001.

■ Williams argues that aggravator one is unconstitutionally vague in that it fails to narrow the class of murderers eligible for the death penalty. The jury was provided with a limiting definition from MAI–CR 3d 313.40, Note on Use 7(2), providing that a finding of depravity of mind could only be made upon a finding that Williams committed repeated and excessive acts of physical abuse upon Felicia Gayle. Given the limiting definition, the jury had ample guidance in making its determination. The instruction is not un-

constitutional. *State v. Cole*, 71 S.W.3d 163 (Mo. banc 2002).

Williams argues that aggravators two, three and four were duplicative because the same facts and conduct were used to prove all three aggravating circumstances. This Court has repeatedly rejected this argument, most recently in *State v. Anderson*, 79 S.W.3d 420 (Mo. banc 2002).

■ Finally, Williams argues that aggravators six through ten were invalid because the trial court, not the jury, determined whether the convictions constituted serious assaultive behavior under Section 565.030.4(1). Williams' relies on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 to support his argument. Neither case applies. In *Apprendi*, the Court held that, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. Allowing the court to determine, as a matter of law, whether prior convictions are "serious assaultive criminal convictions" does not interfere with the jury's mandate to find the facts. Once the court made the determination that the prior convictions were serious and assaultive, the jury is left to determine as a matter of fact whether the defendant indeed had the prior convictions. This procedure does not run afoul of *Apprendi*. *State v. Johns*, 34 S.W.3d 93, 114 n. 2 (Mo. banc 2000).

Likewise, *Ring* does not support Williams' position. In *Ring*, the Court struck down Arizona's capital sentencing scheme in which the trial judge alone determined whether an aggravating factor existed. *Ring* is inapposite because, in this case, the jury determined the existence of the aggravating factors by determining whether he had in fact been convicted of the crimes listed.

## IV. CLOSING ARGUMENT

■ Appellant argues that the trial court plainly erred in not intervening *sua sponte* to prevent the state from improperly personalizing the case by asking jurors to imagine the fear Laura Asaro must have felt as Williams choked her and told her not to tell anyone that he had confessed to the murder. Arguing for jurors to place themselves in the shoes of a party or victim is improper personalization that "can only arouse fear in the jury." *State v. Storey*, 901 S.W.2d 886, 901 (Mo. banc 1995). In *Storey*, the prosecutor asked the jurors to put themselves in the victim's place, then graphically detailed the crime as if the "jurors were the victims . . . ." *Id.*

The prosecutor in this case did not suggest personal danger to the jurors or use the kind of graphic detail that would that would prejudice Williams. The argument was a reasonable attempt to explain why Ms. Asaro did not come forward with her story sooner. The possibility that she feared Williams bore directly on the credibility of her story. The trial court did not err by failing to intervene and stop this argument.

■ Williams also argues that the trial court erred in overruling his objection to the state's penalty phase closing argument in which the prosecutor argued that Williams was the "judge, jury and executioner." Williams contends that this argument was an improper commentary on the exercise of his constitutional right to remain silent. The trial court has broad discretion in controlling the scope of closing argument and the court's rulings will be cause for reversal only upon a showing of abuse of discretion resulting in prejudice to the defendant. *State v. Deck*, 994

S.W.2d 527, 543 (Mo. banc 1999). In order for a prosecutor's statements to have such a decisive effect, there must be a reasonable probability that the verdict would have been different had the error not been committed. *Id.*

The trial court did not abuse its discretion in overruling Williams' objection to the argument. It was a fair rebuttal to Williams' argument for mercy. Furthermore, Williams has not demonstrated prejudice because of the prosecutor's comment.

## V. INDEPENDENT REVIEW

Under Section 565.035, this Court is required to determine, in each death penalty case, whether:

(1) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) the evidence supports the jury's findings of a statutory aggravating circumstance;

(3) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence, and the defendant.

Having thoroughly reviewed the record, this Court concludes that the punishment imposed was not the product of passion, prejudice, or any other arbitrary factor.

■ We next review the record to determine if the evidence supports, beyond a reasonable doubt, the existence of one or more statutory aggravating circumstances. The jury found ten aggravating circumstances. However, as only one valid statutory aggravating circumstance is needed to consider imposition of the death penalty, *State v. Christeson*, 50 S.W.3d 251, 271 (Mo. banc 2001), we need not recite again the evidence supporting each one. The first statutory aggravator submitted to the jury required the jury to find unanimously and beyond a reasonable doubt that Williams murdered Gayle with depravity of mind as evidenced by repeated and excessive acts of physical abuse on Gayle. Williams stabbed and cut Gayle forty three times, inflicting seven fatal wounds. There was sufficient evidence for the jury to find depravity of mind. There was also sufficient evidence to support the circumstances that the murder was committed during a burglary (aggravator (2)), during a robbery (aggravator (3)), and by a person with one or more serious assaultive criminal convictions (aggravators (6), (7), (8), (9), and (10)).

■ Finally, this Court concludes that the death sentence in this case is neither excessive nor disproportionate to the penalty imposed in similar cases, considering the crime, the strength of the evidence, and the defendant. See *State v. Ramsey*, 864 S.W.2d 320 (Mo. banc 1993); *State v. Hunter*, 840 S.W.2d 850 (Mo. banc 1992); *State v. Ervin*, 835 S.W.2d 905 (Mo. banc 1992); *State v. Grubbs*, 724 S.W.2d 494 (Mo. banc 1987). Williams confessed to the murder. The crime involved a vicious attack during a burglary. Williams has a lengthy and violent criminal record. The sentence is not disproportionate.

All concur.