EDWIN H. SMITH, Chief Judge.
 

 Derrick R. Smith appeals the judgment of his convictions, after a jury trial in the Circuit Court of Lafayette County, of first-degree robbery, § 569.020,
 
 [1]
 
 and armed criminal action (ACA), § 571.015. As a result of his convictions, he was sentenced, as a prior and persistent offender, § 558.016, to concurrent terms, in the Missouri Department of Corrections, of life imprisonment for first-degree robbery and fifty years for ACA.
 

 The appellant raises two points on appeal. In Point I, he claims that the trial court erred in overruling his
 
 Batson
 
 objection to the State’s peremptory strike of the only remaining African-American member of the venire because: (1) as to one of the State’s two explanations for the strike, the only conclusion that could be drawn from the record was that it was pretextual; and, (2) as to the State’s other explanation for the strike, it was not race-neutral on its face. In Point II, he claims that the trial court plainly erred in the reading and giving of Instruction No. 1, which was patterned after MAI-CR 3d 302.01, the mandatory instruction concerning the duties of the judge and jury in a criminal trial, because it did not include the material in parentheses, as set forth in MAI-CR 3d 302.01, instructing the jurors concerning their note-taking during the trial, which, in accordance with Note on Use 4 for MAI-CR 3d 302.01, is required to be included in Instruction No. 1 if juror note-taking is authorized by the trial court, as it was in this case.
 

 We reverse and remand.
 

 Facts
 

 On September 30, 2002, the appellant was indicted, as a prior and persistent offender, § 558.016, by a Lafayette County grand jury for first-degree robbery, § 569.020, and ACA, § 571.015. He was charged with robbing, at gunpoint, Harold’s Supermarket in Lexington, Missouri, on August 21, 2002.
 

 The appellant’s case proceeded to a jury trial on August 27, 2003. During
 
 voir dire,
 
 the State exercised one of its peremptory strikes on Wayne Bass, the only remaining African-American member of the venire. The appellant objected, citing
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court overruled the appellant’s objection.
 

 The jury was empanelled and sworn. It was then read MAI-CR 3d 300.06; Instruction No. 1, MAI CR-3d 302.01, concerning the duties of the judge and jury; and, Instruction No. 2, MAI-CR 3d 302.02, concerning evidence and the rulings of the trial court. Instruction No. 1 did not contain any language concerning juror note-taking. The parties then made their opening statements, after which the record indicates that the trial court,
 
 sua sponte,
 
 raised the issue of note-taking with counsel. Note-taking was eventually approved by the trial court.
 

 
 *450
 
 On August 28, 2003, the jury found the appellant guilty of the charged offenses. On September 19, 2003, he filed a motion for judgment of acquittal or in the alternative, for a new trial, alleging,
 
 inter alia,
 
 that the trial court erred in overruling his
 
 Batson
 
 objection to the State’s striking of Bass. The court denied the motion on October 6, 2003, and, on that same date sentenced the appellant, as a prior and persistent offender, to concurrent terms of life imprisonment for first-degree robbery and fifty years for ACA.
 

 This appeal followed.
 

 I.
 

 Because we find that the claim of error in Point II is dispositive of this appeal, we address it alone.
 

 In Point II, the appellant claims that the trial court plainly erred in the reading and giving of Instruction No. 1, which was patterned after MAI-CR 3d 302.01, the mandatory instruction concerning the duties of the judge and jury in a criminal trial. He claims that the trial court erred because Instruction No. 1 did not include the material in parentheses, as set forth in MAI-CR 3d 302.01, instructing the jurors concerning their note-taking during the trial, which, in accordance with Note on Use 4 for MAI-CR 3d 302.01, is required to be included in Instruction No. 1 if juror note-taking is authorized by the trial court, as it was in this case.
 

 The appellant concedes that he did not properly preserve his claim of instructional error for appellate review in that he failed to object at trial to the reading and giving of Instruction No. 1 and did not raise the issue in his motion for new trial.
 
 See
 
 Rule 28.03;
 
 [2]
 

 State v. Bradshaw,
 
 26 S.W.3d 461, 471 (Mo.App.2000). He, therefore, asks for plain error review under Rule 30.20.
 

 Rule 30.20 provides, in pertinent part, that “[wjhether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom.” The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review.
 
 State v. Carr,
 
 50 S.W.3d 848, 853 (Mo.App.2001). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant’s claim substantial grounds exist for believing that the trial court committed clear and obvious error, which resulted in manifest injustice or a miscarriage of justice.
 
 State v. Dudley,
 
 51 S.W.3d 44, 53 (Mo.App.2001). “Plain” error, for purposes of Rule 30.20, is error that is evident, obvious and clear, and results in manifest injustice or a miscarriage of justice.
 
 State v. Hibler,
 
 21 S.W.3d 87, 96 (Mo.App.2000).
 

 If the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court committed error, affecting substantial rights, that was evident, obvious and clear.
 
 Id.
 
 As in the case of our review for “regular” error, not every obvious error found in plain error review mandates reversal.
 
 State v. Barnaby,
 
 91 S.W.3d 221, 225 (Mo.App.2002). In the case of review for “regular” error, to be reversible, the found error must have prejudiced the appellant.
 
 State v. Taylor,
 
 67 S.W.3d 713, 715 (Mo.App.2002). Likewise, in the case of review for plain error, the error found must have prejudiced the ap
 
 *451
 
 pellant, except that such prejudice must rise to the level of manifest injustice or a miscarriage of justice.
 
 State v. Cole,
 
 71 S.W.3d 163, 170 (Mo.
 
 banc
 
 2002). Thus, even if obvious and clear error is found in the first step of the review, the second step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom.
 
 Hibler,
 
 21 S.W.3d at 96.
 

 To succeed on this point, the appellant has the burden of proving that the alleged instructional error resulted in manifest injustice or a miscarriage of justice.
 
 Id.
 
 Instructional error, even if clear and obvious, is rarely found to result in manifest injustice or a miscarriage of justice requiring reversal for plain error.
 
 State v. Roe,
 
 6 S.W.3d 411, 415 (Mo.App.1999). In the context of instructional error, plain error requiring reversal results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury’s verdict.
 
 State v. Deck,
 
 994 S.W.2d 527, 540 (Mo.
 
 banc
 
 1999). Because it appears on the face of the appellant’s claim in Point II that substantial grounds exist for believing that the trial court committed evident, obvious and clear error, resulting in manifest injustice and a miscarriage of justice to the appellant, in failing to include in Instruction No. 1, in accordance with MAI-CR 3d 302.01, the requisite information concerning juror note-taking, we will review the appellant’s claim in Point II for plain error.
 

 When addressing alleged instructional error, we begin with the proposition that if there is an MAI-CR instruction made applicable by the law or the applicable Notes on Use, the trial court is required to instruct the jury in accordance with that instruction. Rule 28.02(c). The failure to give an instruction in accordance with an MAI-CR or any applicable Notes on Use is error, the prejudicial effect to be judicially determined. Rule 28.02(f);
 
 State v. Barnaby,
 
 91 S.W.3d at 225.
 

 Note on Use 2 for MAI-CR 3d 302.01, requires that MAI-CR 3d 302.01 is to be Instruction No. 1; is to be read immediately following MAI-CR 3d 300.06; and is not to be re-read at the conclusion of the evidence, but is to be given to the jurors with the other written instructions for their use during deliberations. There is no dispute that in our case Instruction No. 1 was not read or given to the jury in accordance with MAI-CR 3d 302.01. Note on Use 4 for MAI-CR 3d 302.01 mandates that the following language be included in Instruction No. 1 if the trial court allows the jurors to take notes:
 

 Each of you may take notes in this case but you are not required to do so. I will give you notebooks. Any notes you take must be in those notebooks only. You may not take any notes out of the courtroom before the case is submitted to you for your deliberations. No one will read your notes while you are out of the courtroom. If you choose to take notes, remember that note-taking may interfere with your ability to observe the evidence and witnesses as they are presented.
 

 Do not discuss or share your notes with anyone until you begin your deliberations. During deliberations, if you choose to do so, you may use your notes and discuss them with other jurors. Notes taken during trial are not evidence. You should not assume that your notes, or those of other jurors, are more accurate than your own recollection or the recollection of other jurors.
 

 After you reach your verdict, your notes will collected and destroyed. No one will be allowed to read them.
 

 “If jurors are allowed to take notes, MAI-CR 3d 302.01 requires the trial court to both read an instruction and include a
 
 *452
 
 written instruction regarding notetaking.”
 
 State v. Williams,
 
 97 S.W.3d 462, 472 (Mo.
 
 banc
 
 2003). Despite the fact that the jurors, here, were allowed to take notes, Instruction No. 1, as read and given to the jury, did not include this mandatory language or, for that matter, any language concerning juror note-taking. Thus, there is no question that the trial court clearly and obviously erred in not instructing the jury in Instruction No. 1 on note-taking, as mandated by MAI-CR 3d 302.01. The question is whether manifest injustice or a miscarriage of justice occurred to the appellant as a result.
 

 In
 
 State v. Williams,
 
 the Missouri Supreme Court was confronted with the issue of whether the trial court’s failure to include the mandatory note-taking language of MAI-CR 3d 302.01 in its
 
 written
 
 instructions was plain error. 97 S.W.3d at 472. There the trial court, after the reading of MAI3d 300.06 and the swearing of the jury, read the mandatory note-taking language of MAI-CR 3d 302.01, as part of Instruction No. 1.
 
 Id.
 
 However, it failed to include this language in its written instructions.
 
 Id.
 
 The Court found that the trial court’s failure to include the mandatory note-taking language in its written instructions was not plain error because “[b]y reading the appropriate instruction, the trial court provided the jury with
 
 sufficient guidance regarding the proper role of notetaking.” Id.
 
 (emphasis added). The Court was not required to and did not decide whether it would be plain error for the trial court to include the mandated note-taking language in its written instructions, but fail to read it to the jury as part of Instruction No. 1, or whether it would be plain error for the court not to read the note-taking language as part of Instruction No. 1 or include it in its written instructions.
 

 Here, although conceding that, unlike in
 
 Williams,
 
 the trial court neither read to the jury the mandatory note-taking language of MAI-CR 3d 30.201, nor included it in its written instructions, the State nonetheless contends that the jury was given sufficient guidance regarding the proper role of note-taking such that manifest injustice or a miscarriage of justice did not result to the appellant. In support of its contention, the State asserts in its brief that the “majority of the information imparted in [the note-taking paragraphs of MAI-CR 3d 302.01] were [sic] at one point or another given to the jury.” In that regard, it points to various oral statements of the trial court to the jury concerning note-taking and the giving of other mandated instructions, as providing the functional equivalent of the mandatory note-taking language. Thus, the question for us, in determining whether the trial court plainly erred in failing to instruct the jury on note-taking in accordance with MAI-CR 3d 302.01, is whether the jury, despite the court’s failure to comply with Note on Use 4 for MAI-CR 3d 302.01, was nonetheless given “sufficient guidance regarding the proper role of notetaking”?
 

 As to note-taking, MAI-CR 3d 302.01 initially requires that the jury be instructed by the trial court, in Instruction No. 1, that: “Each of you may take notes in this case but you are not required to do so. I will give you notebooks. Any notes you take must be in those notebooks only.” The State contends that although not done in accordance with MAI-CR 3d 302.01, the equivalent of this information was given to the jury by the trial court, immediately after opening statements, pointing to pages 130-131 of the trial transcript, which read, in pertinent part:
 

 THE COURT: Are you wanting to take notes? How many jurors want to take notes?
 

 JUROR: We will get the secretary’s notes?
 

 
 *453
 
 THE COURT: No, you won’t. Everything she’s taking down you will not get.
 

 JUROR: Then I would like to take notes.
 

 THE COURT: Let me talk with the attorneys for a second and we’ll see what we can do.
 

 (Counsel approached the bench and the following discussion was held)
 

 [[Image here]]
 

 (The proceedings returned to open court.)
 

 THE COURT: Everybody has to take one. You don’t have to use it, but everybody will have to take one.
 

 (At this time notebooks were handed to each member of the jury panel.)
 

 THE COURT: Ladies and gentlemen, you’re free to use the notepads if you wish. If we just allow one person or two persons, then everybody has to have access to the same type of notepad.
 

 This language would seem to indicate, as the State suggests, that the jurors were informed that they could, but were not required, to take notes on the notebooks provided by the trial court. However, this language does not indicate, as required by MAI-CR 3d 802.01, that any notes they took had to “be in those notebooks only”.
 

 MAI-CR 3d 302.01 next requires, as to note-taking, that the jury be instructed by the trial court, in Instruction No. 1, that:
 

 You may not take any notes out of the courtroom before the case is submitted to you for your deliberations. No one will read your notes while you are out of the courtroom. If you choose to take notes, remember that note-taking may interfere with your ability to observe the evidence and witnesses as they are presented.
 

 Again the State concedes that the jury was not instructed in Instruction No. 1 concerning this information in accordance with MAI-CR 3d 302.01, however, it contends that the functional equivalent was nonetheless provided to the jury, pointing to page 309 of the trial transcript, which reads, in pertinent part:
 

 [At the close of the first day of trial:]
 

 THE COURT: ...
 

 Ladies and gentlemen, we will recess for the evening and ask that you be back so we can begin at 9:00 o’clock.
 

 Before I let you, I need to read to you the recess instruction again.
 

 (MAI-CR 3d 300.04 instruction was read to the jury by the Court.)
 

 THE COURT: With that, ladies and gentlemen, we will be in recess until 9 a.m. tomorrow. I do want to try and start at that time, so if you can be here around quarter till.
 

 [[Image here]]
 

 I need you to leave your notes up here as you’re leaving, and we will get them returned to you. Go ahead and close your notepad if you’ve used it. Close it. We won’t look at it. But you will get the notepad returned to you tomorrow.
 

 This information would seem to suggest, as the State contends, that the jurors were advised by the trial court, as required by MAI-CR 3d 302.01, that they could not take their notes out of the courtroom before the case was submitted for their deliberations and that no one would read them while they were out of the courtroom. However, there is nothing in this information that would inform the jurors, as required by MAI-CR 3d 302.01, that if they chose to take notes it might “interfere with [their] ability to observe the evidence and witnesses as they are presented.”
 

 As to the remaining information that is required by MAI-CR 3d 302.01 to be conveyed to the jurors concerning note-taking:
 

 Do not discuss or share your notes with anyone until you begin your delib
 
 *454
 
 erations. During deliberations, if you choose to do so, you may use your notes and discuss them with other jurors. Notes taken during trial are not evidence. You should not assume that your notes, or those of other jurors, are more accurate than your own recollection or the recollection of other jurors.
 

 After you reach your verdict, your notes will be collected and destroyed. No one will be allowed to read them.;
 

 the State concedes that the jury was not instructed as required by MAI-CR 3d 302.01, but contends that the functional equivalent was provided by the trial court’s reading of MAI-CR 3d 300.04, MAI-CR 3d 302.02, MAI-CR 3d 302.05 and MAI-CR 3d 302.06, and its informing the jurors, just after dismissing the alternate and prior to their retiring for deliberations:
 

 THE COURT: Then I’m going to hand the instructions to the bailiff and let the bailiff take the other 12 back to the jury room to begin their deliberations. They can take the notebooks back. Is that satisfactory with both counsel?
 

 MR. BELLAMY: Yes, Your Honor[J
 

 MR. ALLEN: Yes.
 

 THE COURT: Once the trial is over, they need to be returned to the bailiff and we will take care of destroying them.
 

 This information appears to instruct the jurors, as required by MAI CR 3d 302.01, that they could have their notes during their deliberations and that they have to be returned to the bailiff for destruction, after reaching their verdict. It did not, however, inform them of the remaining required information. The State contends that this is satisfied by the reading of MAI-CR 3d 300.04, MAI-CR 3d 302.02, MAI-CR 3d 302.05 and MAI-CR 3d 302.06.
 

 The State contends that the reading of MAI-CR 3d 300.04, as required, informed the jurors, as mandated, that they could “not discuss or share [their] notes with anyone until [they] beg[a]n [their] deliberations.” MAI-CR 3d 300.04.1 requires the trial court to read at the first recess and adjournment of court:
 

 It is the Court’s duty to instruct you now upon a matter about which you will be reminded at each recess or adjournment of Court. Until this case is given to you to decide, you must not discuss any subject connected with the trial among yourselves, or form or express any opinion about it, and, until you are discharged as jurors, you must not talk with others about the case, or permit them to discuss it with you or in your hearing (or read, view, or listen to any newspaper, radio, or television report of the trial).
 

 The bailiff and other officers of the Court are not permitted to talk to you about any subject connected with the trial, and you are not permitted to talk to them about it.
 

 The attorneys representing the state and the defendant are under a duty not to do anything that may even seem improper. Therefore, at recesses and adjournments they will avoid saying anything to the jury except, perhaps, something like “Good morning” or Good afternoon.” In doing that they do not mean to be unfriendly, but are simply doing their best to avoid even an appearance, that might be misunderstood, that they or you are doing anything improper.
 

 The same applies to witnesses and to the defendant(s). They have been or will be instructed to avoid all contacts with the jury, even to talk about matters wholly unrelated to the case.
 

 
 *455
 
 MAI-CR 3d 300.04.2 requires the trial court to read at subsequent recesses or adjournments:
 

 The Court again reminds you of what you were told at the first recess of the Court. Until you retire to consider your verdict, you must not discuss this case among yourselves or with others, or permit anyone to discuss it in your hearing. You should not form or express any opinion about the case until it is finally given to you to decide. (Do not read, view, or listen to any newspaper, radio, or television report of the trial.)
 

 The record reflects that the trial court, at the first and subsequent recesses and adjournments of the court, read the appropriate version of MAI-CR 3d 300.04, as required. In our view, while it might be arguable, as the State contends, that the jurors would have interpreted the admonition of MAI-CR 3d 300.04, not to discuss the ease among themselves before deliberations, as including the discussion of their notes, it is unreasonable to suggest that the jurors would have also interpreted it as an admonition not to also physically “share” their notes, prior to deliberations, which is required by MAI-CR 3d 302.01.
 

 As to the remaining required information concerning note-taking, the State contends, in its brief, that the reading of MAI-CR 3d 302.02, 302.05, and 302.06 at the end of the trial sufficiently advised the jurors that “they could use their notes and discuss them with other jurors [and] that they should not assume that their notes or those of other jurors are more accurate than their own recollection or that of others;” and that “argument and statements of counsel, questions, objections and discussion by the court and counsel are not evidence.” MAI-CR 3d 302.02, governing “Evidence and Rulings of the Court,” is to be given in every case as Instruction No. 2 and is to be read immediately following MAI-CR 3d 302.01. MAI-CR 3d 302.02 reads:
 

 You must not assume as true any fact solely because it is included in or suggested by a question asked a witness.
 
 A question is not evidence,
 
 and may be considered only as it supplies meaning to the answer.
 

 From time to time the attorneys may make objections. They have a right to do so and are only doing them duty as they see it. You should draw no inference from the fact that an objection has been made.
 

 If the Court sustains an objection to a question, you will disregard the entire question and you should not speculate as to what the answer of the witness might have been. The same applies to exhibits offered but not excluded from the evidence after an objection has been sustained. You will also disregard any answer or other matter which the Court directs you not to consider and anything which the Court orders stricken from the record.
 

 The opening statements of attorneys are not evidence.
 
 Also, you must not consider as evidence any statement or remark or argument by any of the attorneys addressed to another attorney or to the Court. However, the attorneys may enter into agreements or stipulations of fact. These agreements and stipulations become part of the evidence and are not to be considered by you as such.
 

 (Emphasis added.) MAI-CR 302.05 is required to be given in every case and is to be read immediately prior to the last instruction, MAI-CR 3d 302.06. Note on Use 2, MAI-CR 3d 302.05. MAI-CR 3d 302.05 reads, in pertinent part: ‘You will then discuss the case with your fellow jurors. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.”
 
 *456
 
 MAI-CR 3d 302.06 is to be given in every case and is the last instruction to be read to the jury before it retires for its deliberations. Note on Use 2, MAI-CR 3d 302.06. MAI-CR 3d 302.06 reads, in pertinent part:
 

 The attorneys will now have the opportunity of arguing the case to you. Their arguments are intended to help you in understanding the evidence and applying the law, but they are not evidence.
 

 You will bear in mind that it is your duty to be governed in your deliberations by the evidence as you remember it, the reasonable inferences which you believe should be drawn therefrom, and the law as given in these instructions.
 

 It is your duty, and yours alone, to render such verdict under the law and the evidence as in your reason and conscience is true and just.
 

 The State contends that the reading and giving of MAI-CR 3d 302.05, that each juror should discuss the case with his fellow jurors before deciding the case, was the equivalent of advising the jurors, as required by MAI-CR 3d 302.01, that they could, if they chose, discuss their notes during deliberations. The State also contends that the admonition of MAI-CR 3d 302.06, that each juror should be governed, during deliberations, by the evidence as he remembered it, was the equivalent of advising the jurors, as required by MAI-CR 3d 302.01, that each juror should not assume that his notes, or the notes of other jurors, were more accurate than his own or the notes of the other jurors. And, finally, the State contends that the admonitions of MAI-CR 3d 302.02 and MAI-CR 3d 302.06 that questions of counsel; opening statements of counsel; statements, remarks, or arguments of counsel; or closing arguments of counsel are not to be considered evidence is the equivalent of advising the jurors, as required by MAI-CR 3d 302.01, that their notes were not evidence.
 

 It is at least arguable that the giving of MAI-CR 3d 302.05, coupled with the trial court’s oral instruction that the jurors could have them notebooks during deliberations, would have caused the jurors to believe that it was permissible for them to discuss their notes during deliberations, of which they were required to be advised by MAI-CR 3d 302.01. However, it is a stretch to believe that in advising the jurors, in MAI-CR 3d 302.06, that they were to decide the case based on the evidence as they remembered it, was the equivalent of advising them that in their deliberations, they “should not assume that [their] notes, or those of other jurors, are more accurate than [their] own recollection or the recollection of other jurors.” It is even a greater stretch to believe that the admonitions of MAI-CR 302.02 and 302.06, that the questions of counsel; opening statements of counsel; statements, remarks, or arguments of counsel; or closing arguments of counsel are not to be considered evidence were the equivalent of advising the jurors, as required by MAI-CR 3d 302.01, that their notes were not evidence.
 

 The Missouri Supreme Court, in mandating, in Note on Use 4 for MAI-CR 3d 302.01, that the note-taking language be included in Instruction No. 1, obviously believed that there was potential for abuse from note-taking by jurors, unless they were given guidance as to the proper role of note-taking in the trial of a case and that the existing mandatory instructions were not sufficient to provide that guidance. Most notably there would have been concern for the fact that jurors might abdicate their responsibilities to listen to and observe the evidence, and to remember the evidence individually, choosing instead to rely on their own notes or the notes of other jurors. And, in mandating that the
 
 *457
 
 note-taking information be read to the jurors at the commencement of the trial, it is also obvious that the Court believed that it was vital that jurors were made aware of this information from the beginning. For example, included in the mandated note-taking language is a warning to the jurors that should they choose to take notes they should be aware of the fact that it might interfere with their ability to listen to the evidence and observe the witnesses. This warning would not only serve as an aid to the jurors in making an informed decision with respect to taking notes, but would serve as a necessary reminder to those who chose to take notes to minimize the resulting distraction so they would not be abdicating their responsibilities as jurors to listen to the evidence and observe the witnesses. This warning would be useless, unless given at the beginning of trial, as mandated by MAI-CR 3d 302.01.
 

 Here, even considering the oral instructions of the trial court concerning note-taking and the giving of MAI-CR 3d 300.04, 302.01, 302.02, 302.05, 302.06, the jurors were not given all the information mandated by MAI-CR 3d 302.01 concerning note-taking. They were not informed, as mandated, that: (1) “[a]ny notes [they] take must be in those notebooks only”; (2) “[i]f [they] cho[ ]se to take notes, remember that note-taking may interfere with [their] ability to observe the evidence and witnesses as they are presented”; (3) “[they were] not [to] discuss or
 
 share
 
 [their] notes with anyone until [they] beg[a]n [their] deliberations”; (4) “[n]otes taken during trial are not evidence”; and, (5) “[they] should not assume that [their] notes, or those of other jurors, are more accurate than [their] own recollection or the recollection of other jurors.” In addition, the information the jury did receive concerning note-taking was provided in piecemeal fashion throughout the course of the trial, thereby de-emphasizing its importance. Moreover, a portion of the information touted by the State as providing the equivalent of the mandatory note-taking language was not provided at the outset of the trial, as the Court clearly intended. For these reasons, we find that the omissions by the trial court in instructing the jury on note-taking, as mandated by Note on Use 4 for MAI-CR 3d 302.01, were significant and resulted in the jury’s not receiving “sufficient guidance regarding the proper role of notetaking” such that the court committed plain error, requiring reversal for a new trial.
 
 See State v. Houston,
 
 139 S.W.3d 223, 230 (Mo.App.2004) (explaining that the proper remedy is to reverse and remand for a new trial where the reversal is based on trial error rather than insufficient evidence).
 

 Conclusion
 

 The judgment of the appellant’s convictions of first-degree robbery, § 569.020, and ACA, § 571.015, are reversed and the case is remanded for a new trial.
 

 SPINDEN and SMART, JJ., concur.
 

 [1]
 

 . All statutory references are to RSMo 2000, unless otherwise indicated.
 

 [2]
 

 . All rule references are to the Missouri Rules of Criminal Procedure, 2004, unless otherwise indicated.